## Owens *v.* Lewis.

PLEADING.—*Demurrer.*—A demurrer for want of sufficient facts will be overruled, if on the facts stated the plaintiff is entitled to any relief whatever, although not entitled to that demanded.

SAME.—*Trespass.—Injunction.*—A complaint alleging the commission of a trespass upon real estate, by cutting and carrying away timber, and alleging that an additional trespass is threatened and apprehended, and asking an injunction, is good on demurrer.

STATUTE OF FRAUDS.—*Sale of Growing Trees.*—A contract for the sale of growing trees is a contract for the sale of an interest in land, and must be in writing, in order to render it binding on either party.

LICENSE.—*Trespass.*—A parol license to enter on lands will excuse what would otherwise be a trespass.

SAME.—A license confers only a privilege, and does not pass an estate, and may be revoked or countermanded at any time by the licensor.

SAME.—*Parol Agreement for Sale of Growing Trees.*—A parol agreement for the sale of growing trees, the trees to be severed and taken from the land by the vendee, will amount to a license for the vendee to enter upon the vendor's land for the purpose of making such severance; and if the license is not revoked before the trees are severed, the title to the trees will vest in the vendee, and the license after such severance will become coupled with an interest and irrevocable, and the vendee will have a right to enter and remove the trees thus severed; but if, before the trees are severed, the vendor should revoke such license, no title will pass to the vendee, and no rights will vest by virtue of such parol agreement.

GROWING TREES.—Growing trees are a part of the real estate, and are in the possession of the owner of the real estate until they are severed, and no delivery of the trees to another can take place, short of transferring an interest in the real estate.

From the Wayne Common Pleas.

*T. J. Study,* for appellant.

*H. C. Fox* and *L. D. Stubbs,* for appellee.

BUSKIRK, J.—The assignments of error call in question the sufficiency of the complaint, to which a demurrer was overruled, and the sufficiency of the answer, to which a demurrer was sustained.

The complaint, omitting the formal parts, was as follows:

" The said plaintiff, Allen W. Lewis, complains of the said defendant, Benjamin A. Owens, and says that said defendant, on the 9th day of July, 1872, in person and by his servants and agents, entered upon the lands of the said plaintiff, situate in said county; to wit, the south-east quarter of section 32, township 18, range 14 east, and with strong hand and force of arms, without the authority and consent of said plaintiff, and commenced cutting and destroying the timber of said plaintiff, situate on said lands, and has cut and destroyed divers trees on said lands, the property of said plaintiff; that the said defendant, in person and by his servants and agents, without leave as aforesaid, wrongfully and unlawfully entered upon said land of said plaintiff and cut timber

thereon of the value of one hundred dollars, and carried part thereof away, to his damage of one hundred dollars. And the plaintiff further says, that said defendant declares, threatens, and says, that he intends to continue cutting and hauling away timber off and from said land 'until he shall have taken one hundred valuable trees therefrom; and the plaintiff shows that there is not time to give said defendant notice of their application for a restraining order or temporary injunction, without endangering the loss of other and valuable timber belonging to him; hence he says an emergency exists, as he verily believes, for a temporary restraining order; wherefore plaintiff prays the said defendant, and all others acting under him, may be temporarily restrained from cutting timber or trees from said land, or entering upon the same; and, upon a final hearing, he asks a judgment of two hundred dollars, and that defendant and all others acting under him be perpetually enjoined from entering upon said lands and cutting and taking timber therefrom, and grant him such other relief as may be just."

The principal objection urged to the complaint is, that its purpose is to enjoin the commission of a mere trespass upon land, and that this does not constitute a sufficient ground for injunctive relief. We think the counsel for appellant has misconceived the scope and purpose of the complaint.

The complaint in this action charged the defendant with wrongfully and unlawfully entering upon, and cutting, destroying, and carrying away timber from, the lands of the plaintiff, of the value of one hundred dollars. This was a cause of action and entitled the plaintiff to relief by way of damage, which was prayed for. It was expressly alleged, that the defendant unlawfully broke and entered the plaintiff's close. This was the gist of the action. The cutting and carrying away timber after entry was a matter in aggravation, going to the measure of damages. *Rucker* v. *M'Neely*, 4 Blackf. 179; *Green* v. *Boody*, 21 Ind. 10; *Holcraft* v. *King*, 25 Ind. 352; *Taylor* v. *Cole*, 3 Term Rep. 292; 1 Smith Lead. Cases, 249.

It was the unlawful entry upon the plaintiff's land that the defendant was called upon to explain; *quare clausum fregit.* The facts constituting an unlawful entry were sufficiently alleged, and this was a cause of action. In addition to this, it was charged, that the defendant "threatened to continue cutting and hauling away timber off and from said land," and to prevent this an injunction was asked. The commission of a complete trespass was alleged and damages therefor demanded; an additional trespass was apprehended and threatened, and this the court was asked to prevent. It certainly requires no argument to prove that the demurrer to the complaint, for the reason that the same did not "state facts sufficient to constitute a cause of action," should be overruled; for a "cause of action" is unquestionably shown by the facts alleged. This being true, the court committed no error in the ruling made, and the question argued by counsel, as to whether an injunction will be granted to prevent the commission of a trespass, is not presented; for a trespass already committed was alleged as a cause of action, and this made the complaint good on demurrer.

A demurrer for want of sufficient facts will be overruled, if on the facts stated the plaintiff is entitled to any relief whatever, although not to that demanded. *Bennett* v. *Preston*, 17 Ind. 291.

We think the court committed no error in overruling the demurrer to the complaint.

After the demurrer to the complaint was overruled, the appellant filed an answer in one paragraph in bar of the action. To this a demurrer was filed and sustained, and this ruling is assigned for error, and presents for our decision the principal, and by far the most important, question in the case. The answer was as follows:

"The defendant, for answer to the complaint, says that, heretofore, to wit, on the 25th day of June, 1872, the said plaintiff was then the owner of a large number of walnut trees, then standing and growing upon the lands of the plaintiff, mentioned and described in the complaint, and the

defendant was then desirous of purchasing of plaintiff one hundred and six of said trees, and the latter then offered to sell said number of said trees to the defendant, at and for the sum of two thousand dollars, which offer and proposition of plaintiff the defendant then and there accepted; and that the plaintiff and defendant then went to the plaintiff's lands, where said trees were situate, and the defendant then selected, measured, and counted one hundred and six of said trees, and which number of said trees so selected, measured, and counted by the defendant the plaintiff then and there sold and delivered to the defendant, at and for the sum of two thousand dollars, and which number of said trees the defendant then and there accepted of the plaintiff at said sum, which, according to said agreement of said parties thereto, was to be paid as follows, to wit: one thousand dollars inside of three weeks from the time of sale, and the balance thereof before all of said trees were cut and removed from the plaintiff's land, which was to be done in the course of one or two months from the time of sale; and the defendant says that before the expiration of three weeks from said sale, the defendant tendered the plaintiff the whole of said two thousand dollars, which the plaintiff refused to accept. And the defendant says that afterward, to wit, on the 9th day of July, 1872, he did enter upon the lands of plaintiff mentioned and described in the complaint, and commenced cutting and removing said trees from the said lands of the plaintiff, in pursuance of the terms of said contract between plaintiff and defendant for the sale of said trees as above stated; and defendant says that about the time he commenced to cut and remove said trees, as above stated, the plaintiff gave him notice not to cut or remove said trees from his said lands, which notice of the plaintiff the defendant disregarded, and proceeded to, and commenced to cut and remove said trees, and those only that he had purchased of plaintiff; whereupon, the plaintiff commenced this suit. And the defendant says that the above entry upon said lands of plaintiff, and the cutting of timber thereon

as above stated, constituted the alleged trespass in the complaint stated."

Counsel for appellant contends that the owner of standing trees, growing upon his own soil, may make a valid sale of the same by verbal contract, and that such contract is not in any manner affected by that provision of the statute of frauds governing the manner in which real estate or any interest therein shall be sold, especially when such sale contemplates the immediate separation and severance of such trees from the soil and a removal therefrom. Such a transaction is evidently and substantially a sale of personal property only.

Counsel for appellee assume the following legal propositions :

1. A contract for the sale of growing trees is a contract for the sale of an interest in land, and must be reduced to writing, in order to render it binding upon either party.

2. If such contract is not reduced to writing, it is not invalid, yet it cannot be enforced, for the reason that it cannot be proven under the statute of frauds.

3. A parol contract for the sale of growing trees, though it cannot be enforced, will justify the vendee in entering upon the lands of the vendor for the purpose of severing such trees from the land. It will amount to a license so to do.

4. Although a parol contract for the sale of growing trees will amount to a license for the vendee to enter upon the vendor's land, yet such license is revocable, at the pleasure of the vendor, at any time before it is acted upon by the vendee.

5. If, after a license has been given by the making of such a contract, and before it is revoked, the vendee enters upon the vendor's lands and severs the trees, the contract becomes executed, and the license is irrevocable.

6. If, after such contract has been made, and in pursuance thereof, the vendor severs and delivers the trees to the vendee, or permits the vendee to enter and sever them, the trees

become chattels, and the title thereto will pass to the vendee.

7. If the sale of the trees was a sale of the trees as chattels, the price was over fifty dollars; the purchaser did not receive any part of the property, did not give anything in earnest to bind the bargain, nor in payment, and there was no note or memorandum made in writing and signed by either party.

The principal and controlling question presented for our decision is, whether the contract set up in the answer was a contract for the sale of real estate, and therefore required to be in writing, or whether it was a contract for the sale of personal property. The decision of the question depends upon whether forest trees standing in the soil are regarded in the law as a part of the realty, or whether they are regarded as personal property. The question is not free from difficulty. Eminent text writers have expressed widely different views on the subject. The adjudged cases in England and in this country are not uniform. The number of text books and adjudged cases cited and relied upon by opposing counsel, and the confidence displayed by them, in their very able and elaborate briefs, in the correctness of the positions by them assumed, seem to render necessary a careful examination and review of the authorities bearing upon the question, with the view of determining upon which side of the question will be found the weight of authority and cogency of argument.

We will, in the first place, examine the authorities cited by counsel for appellant.

Section 271, 1 Greenleaf Ev. 305, is much relied on. It reads as follows:

"Sec. 271. The main difficulties under this head have arisen in the application of the principle to cases, where the subject of the contract is trees, growing crops, or other things annexed to the freehold. It is well settled that a contract for the sale of fruits of the earth, ripe, but not yet gathered, is not a contract for any interest in lands, and

Owens *v.* Lewis.

so not within the statute of frauds, though the vendee is to enter and gather them. And subsequently it has been held, that a contract for the sale of a crop of potatoes was essentially the same, whether they were covered with earth in a field, or were stored in a box; in either case, the subject-matter of the sale, namely, potatoes, being but a personal chattel, and so not within the statute of frauds. The later cases confirm the doctrine involved in this decision, namely, that the transaction takes its character of realty or personalty from the principal subject-matter of the contract, and the intent of the parties; and that therefore a sale of any growing produce of the earth, reared by labor and expense, in actual existence at the time of the contract, whether it be in a state of maturity or not, is not to be considered a sale of an interest in or concerning land. In regard to things produced annually by the labor of man, the question is sometimes solved by reference to the law of emblements; on the ground, that whatever will go to the executor, the tenant being dead, cannot be considered as an interest in land. But the case seems also to be covered by a broader principle of distinction, namely, between contracts conferring an exclusive right to the land for a time, for the purpose of making a profit of the growing surface, and contracts for things annexed to the freehold, in prospect of their immediate separation; from which it seems to result, that where timber, or other produce of the land, or any other thing annexed to the freehold, is specifically sold, whether it is to be severed from the soil by the vendor, or to be taken by the vendee, under a special license to enter for that purpose, it is still in the contemplation of the parties, evidently and substantially a sale of goods only, and so is not within the statute."

No authorities are referred to in the text, but those cited in the foot-notes do not sustain either the text or the conclusions in the notes, if it is intended to convey the idea that any property has been acquired in the trees before they are actually severed from the soil. 4 Kent Com. 450 and

451, is referred to, but certainly does not sustain the text or the note. All that is said on the subject by the author has reference to the annual produce of the land; that is, growing crops, and not timber; while notes *d* and 2 and 3 are positive authorities in favor of the positions assumed herein by the appellee; and special attention is called to these notes as they appear in the 11th ed. of Kent's Com. 517. Long on Sales, pp. 76–81, is an authority not sustaining the text or note, as will be seen from the quotations in the note.

*The Bank of Lansingburgh* v. *Crary*, 1 Barb. 542, holds that growing trees, fruit, and grass, being parcel of the land, are within the statute of frauds, and until severed from the land, either actually or in contemplation of law, they cannot be conveyed, or contracted to be conveyed, by parol, or taken in execution as chattels.

The case of *Poulter* v. *Killingbeck*, 1 B. & P. 397, decided in 1799, has reference to renting a farm for a moiety of the crops instead of money rent.

The case of *Parker* v. *Staniland*, 11 East, 362, was a verbal contract for potatoes, then in the ground, a growing crop, and which is, and long has been, recognized as a chattel.

*Crosby* v. *Wadsworth*, 6 East, 602, was a verbal contract for mowing grass, which was held void under the statute of frauds.

*Smith* v. *Surman*, 9 Barn. & C. 561, was a verbal contract for timber, which, at the time, plaintiff was having cut down, most of it being then actually standing. The vendor was to cut the trees himself, and receive pay by the foot. It was held to be a sale of chattels. It was to be delivered as a chattel by the vendor.

*Watts* v. *Friend*, 10 Barn. & C. 446; A. agreed to supply B. with a lot of turnip seed, and B. agreed to sell the crop of seed produced therefrom at one pound one shilling per bushel, and Lord TENTERDEN held it was not an interest in land; for the thing agreed to be delivered would, at the time of delivery, be a chattel.

*Bostwick* v. *Leach*, 3 Day, 476, 484, was where machinery

in a mill had been sold, and the distinction between machinery and growing timber is certainly obvious to every one.

*Whipple* v. *Foot*, 2 Johns. 418, decides that wheat growing on the ground is a chattel and liable to execution.

*Stewart* v. *Doughty*, 9 Johns. 108, has reference to emblements.

*Frear* v. *Hardenbergh*, 5 Johns. 276, was an action to recover for work and labor in building a house on land.

*Austin* v. *Sawyer*, 9 Cowen, 39, has reference to growing crops of wheat.

In *Erskine* v. *Plummer*, 7 Greenl. 447, the facts are somewhat complicated, but are sufficiently stated in the following extract from the opinion of the court: "The plaintiff entered under the contract, and by permission of the owner, cut the timber, carried it away, and paid the full consideration demanded. The actual receipt of the price constituted a sale of the timber, after it was severed, if it was not consummated before. After it was severed, there could be no pretence that it constituted an interest in land, and a sale thus made is entirely relieved from any objection arising under the statute of frauds." The syllabus of this case seems to have misled those who have referred to it. It is as follows: "A sale of timber by parol, to be cut and carried away by the vendee, seems not to be within the statute of frauds." There is nothing in the case to warrant this deduction. It will thus be seen that the facts and the decision are very different from the syllabus, and the case is one consistent with the general run of decisions, and in no respect adverse to the appellee in this case.

Chitty on Contracts, referred to, neither supports the conclusions of the text nor note. The author refers to the case of *Smith* v. *Surman, supra,* approvingly, and states as the result of the investigation, "the object of a party who sells timber is not to give the vendee any interest in his land, but to pass to him an interest in the trees, when they become goods and chattels. Here the vendor was to cut the trees

himself. His intention was not to give the vendee any property in the trees until they were cut and ceased to be a part of the freehold.    *    *    The defendant could take no interest in the land by this contract, because he could not acquire any property in the trees until they were cut." Chit. Con., 5th Am. ed., p. 301.

*Miller* v. *Baker*, 1 Met. 27, and *Whitmarsh* v. *Walker*, 1 Met. 313, are cited. The last case was the case of nursery stock, and the case of *Miller* v. *Baker*, *supra*, shows that the trees referred to were regarded in the light of growing crops.

In *Claflin* v. *Carpenter*, 4 Met. 580, the following propositions were stated:

" A contract for the sale of growing wood and timber, to be cut and removed by the purchaser, is not a contract for the sale of any interest in or concerning lands, etc., within the statute of frauds. Rev. Stat. Mass. ch. 74, sec. 1. Such a contract is to be construed as passing an interest in the trees, when they are severed from the freehold, and not any interest in the land.    So it was decided in *Smith* v. *Surman*, 9 Barn. & Cres. 561. See Lord Abinger's remark (9 Mees. & Welsb. 505) on the decision in the case of *Smith* v. *Surman*, 9 B. & C. 561. *Bostwick* v. *Leach*, 3 Day, 484; *Erskine* v. *Plummer*, 7 Greenl. 447; *Whitmarsh* v. *Walker*, 1 Met. 313.

" The same principle is laid down in many other cases referred to in Chitty on Contracts, 5th Am. ed., 300–302, and cases referred to in Greenleaf on Evidence, sec. 271 and note.

"A license to enter upon the land of another, and do a particular act, or a series of acts, may be valid, though not granted by deed or in writing. Such a license does not transfer any interest in the land, although when granted for a valuable consideration, and acted upon, it cannot be countermanded."

These authorities have reference to growing crops, and cases where timber was to have been delivered as a chattel, or where the license had been executed, and the vendor estopped from denying the contract; and the learned author

appears to have disregarded all these important elements, and drawn a deduction unwarranted by the authorities cited, and broader than is anywhere authorized.

Counsel for appellant has referred to Roberts on Frauds, Sugden on Vendors, and Washburn on Real Property, as supporting his view of the question under examination. It will be found upon examination of later editions of these works, that the learned authors have changed very materially and essentially their views upon the very passages to which reference is made.

Roberts on Frauds, page 126, is cited, and a lengthy quotation is made therefrom in appellant's brief. The edition referred to and quoted from is the 2d American ed., published in 1823. It is there said, that where grass and trees are "sold in prospect of separation, it is in contemplation of the parties a bare chattel." The author refers to the dictum in 1 Lord Raymond, as his authority. Turning back to the "advertisement" in the same volume, page 14, it will be seen that Mr. Roberts frankly confesses that this is not the law, and says: "In page 126, the reader will find, that on a slender foundation (being the only one which existed when that page was written), I have supposed a contract for the growing produce of land, as being made in prospect of severance, not to be for any interest in the land itself, and so not to fall within the fourth section of the statute of frauds. A case was, however, decided last Trinity Term in the court of King's Bench, which has determined otherwise." The case referred to is the leading case of *Crosby* v. *Wadsworth*, and which has since been firmly adhered to, by the English courts, as correct in principle.

Counsel also quotes from page 111, sec. 36, of the 6th American edition of Sugden on Vendors, published in 1843. In this edition, there is quite a lengthy discussion of the question, in which the author evidently inclines to the theory of the appellant in this case, but after this was written, the learned author revised and rewrote his book, and seems to have entirely changed his opinion, as will be observed by

reference to the 8th American from the 14th London edition, published in 1873, where the whole of the section quoted by appellant in his brief, with much more upon this subject is omitted, and instead he states, on page 182, vol. 1, that "an agreement to sell a crop which would go as emblements to an executor, *e. g.*, such as a crop of grass, can only be bound by a written contract; which applies equally to a sale of growing poles, or of standing underwood, and of course, therefore, to timber."

Again, counsel quotes from Washburn on Real Property, vol. 3, p. 301, where it is stated: "A man may grant trees growing on his own lands without deed. So he may corn in the ground, or fruit on the trees standing on his land, although these may not have been severed." This passage appears in the 1st and 2d editions of his work. In his 3d edition, however, published in 1868, he modifies his views. In the first volume of his last edition, page 8, will be found quite a lengthy discussion of the subject which does not appear in the other editions. Here Mr. Washburn takes the ground, that such a contract, as long as it remains executory, passes no title to the vendee; that it amounts to a "license rather than a grant of an interest in real estate, and though liable to be revoked, if executed carries the property in such of the trees as shall have been severed from the freehold. * * If it has not been executed, the whole rests in contract, and, so long as the timber or other product of the soil continues in its natural condition, and no act is done by the vendee towards its separation from the soil, no property or title thereto passes to the vendee." This view of the law is now generally received with favor.

Reference is also made to *Bostwick* v. *Leach*, 3 Day, 476, decided in 1809. But as this was a "parol contract for the purchase of mill-stones, running gears, bolts, tacklings, tools, and utensils belonging to, and removable from, a mill," it can hardly be said to be in point, and therefore it is unnecessary to notice it further.

The cases of *Smith* v. *Bryan*, 5 Md. 141, *Cain* v. *Mc-*

*Guire,* 13 B. Mon. 340, and *Byassee* v. *Reese,* 4 Met. Ky. 372, are the cases upon which the appellant chiefly relies. In these cases, the broad ground is taken, that a verbal contract for the sale of growing trees is not for an interest in land. *Smith* v. *Bryan* is evidently not a well considered case. The authorities are not reviewed, not even referred to. It will be noticed that these cases recognize the fact that growing trees are a part of the land, but say that a verbal contract for the sale of them changes their character as property and converts them into personal property, and this, by holding that there is a constructive severance by reason of such contract.

The ruling in the two Kentucky cases is based upon the above section from Greenleaf, and it has been shown that the doctrine therein enunciated is not supported by the cases cited, and is in conflict with the general weight and current of authorities. Besides, the ruling in the above cases is in conflict with the ruling in the case of *Craddock* v. *Riddlesbarger,* 2 Dana, 205, where Mr. Chief Justice ROBERTSON says :

" Although such annual productions or fruits of the earth as clover, timothy, spontaneous grasses, apples, pears, peaches, cherries, etc., are considered as incidents to the land in which they are nourished, and are, therefore, not personal, nevertheless, everything produced from the earth by annual planting, cultivation and labor, and which is therefore denominated, for the sake of contradistinction, *fructus industriæ,* is deemed personal and may be sold, as personalty, even while growing and immature."

It is true, there is nothing said in the above opinion in reference to forest trees ; but if clover, timothy, and the various kinds of fruit named, are incidents to the realty, and therefore not personal, does it not result, for a much stronger reason, that forest trees, not planted by the hand of man, are incidents to the realty, and therefore not personal property ? We think the conclusion irresistibly follows.

This question has frequently been before the Supreme

Court of Massachusetts, and that court has uniformly held the law to be as above stated. Counsel for the appellant refers to some of the decisions in that state as supporting his theory of this case, while in truth they are fatal to his answer, as a reference thereto will show.

Taking the decisions referred to, in the order in which they were rendered, first comes *Whitmarsh* v. *Walker*, 1 Met. 313. In this case, a parol contract had been made for "a great number of multicaulis mulberry trees," and these "were nursery trees, raised to be sold and transplanted." For this reason, it was insisted that they were "to be considered as personal chattels," and the court so held upon the authority of *Miller* v. *Baker*, 1 Met. 27. This view is entirely in accordance with the law, both in England and in this country. Such products of the soil are classed as "emblements," for they are considered as "articles of trade and merchandise." 1 Williams Ex. 613; 1 Redfield Wills, 152; Schouler Pers. Prop. 123; 2 Bl. Com. 389; *Penton* v. *Robart*, 2 East, 88; *Miller* v. *Baker*, 1 Met. 32. The case, however, turned upon another point that is wholly unimportant, as far as this case is concerned.

Next in order comes the case of *Claflin* v. *Carpenter*, 4 Met. 580. This case has already been referred to. Here the contract had been executed by sawing and removing the trees contracted for, and it was held that "such a contract is to be construed as passing an interest in the trees, when they are severed from the freehold, and not any interest in the land. A license to enter on the land of another, and do a particular act or a series of acts, may be valid, though not granted by deed or in writing. Such a license does not transfer any interest in the land, although when granted for a valuable consideration, and acted upon, it cannot be countermanded." Upon this point the case turned, and the rule here stated has been approved and explained in subsequent cases by the same court. This decision has been cited and quoted from by the appellant as an authority in his favor. Following this comes *Nettleton* v. *Sikes*, 8 Met. 34. This was an action of "tres-

pass for breaking and entering the plaintiff's close, and cutting down and carrying away trees." Here a contract had been made, by which the defendant was to cut a number of oak trees, peel them, make them into wood, and was to have the bark "for his own use." After the trees were cut and peeled, and before the bark was removed from the plaintiff's land, the plaintiff forbade the defendant to take it away. It was held, that "when the bark was peeled it became the property of the defendant," and that "a beneficial license, to be exercised upon land, when acted upon under a valid contract, can not be countermanded."

This case was followed by *Nelson* v. *Nelson*, 6 Gray, 385, and *Douglas* v. *Shumway*, 13 Gray, 498. In each of these cases, it appeared that a license had been acted on by the vendee, who had entered on the land and cut the timber which was the subject of the sale, and "had thereby acquired a title to the wood as personal property."

In *Giles* v. *Simonds*, 15 Gray, 441, a case was presented where a sale had been made of growing trees, and after the vendee had entered upon the vendor's land and severed a part of the trees, the vendor forbade him to cut the remainder, and from removing those already cut. It was decided, that the vendor had a right to terminate the contract and revoke the license to the trees left standing, but he could not as to those already severed. This case, together with the cases of *Claflin* v. *Carpenter* and *Nettleton* v. *Sikes*, is referred to and approved in *Burton* v. *Scherpf*, 1 Allen, 133, where it is said: "A parol license by the owner of real estate, to enter or do any particular act upon it, may commonly be revoked at any time before the object and purpose for which it was conceded has been fully availed of, or wholly accomplished."

Next comes the important case of *Drake* v. *Wells*, 11 Allen, 141, which was an action for trespass. A quantity of growing trees had been sold at auction, and afterward the land was conveyed by deed, with no reservation of the trees. The trees were cut and taken away, and the owner of the land

brought the action, and it was held that he should recover, as a conveyance of the land amounted to a revocation. It is said in the opinion: "So long as the timber or other product of the soil continues in its natural condition, and no act is done by the vendee towards its separation from the soil, no property or title passes to the vendee. The whole rests in contract. A revocation of the license to enter on the land does not defeat any valid title; it does not deprive an owner of chattels of his property in or possession of them. The contract being still executory, no title has passed to the vendee." The preceding cases are then referred to, and the court continues : "Taking the most favorable view of these cases in behalf of the defendants, they had acquired no title to the wood standing on the land of the plaintiff. They had only an executory contract for the purchase of the trees growing on the premises, with a license from the plaintiff's grantor to enter and cut and remove the same. This license, not being acted on, was revocable." Such is the law in Massachusetts.

It is claimed by counsel for appellant, that the decision of this court in *Wright* v. *Schneider*, 14 Ind. 527, is decisive of the question under examination in his favor. As the opinion of the court is very short, we will reproduce it entire :

" *Per Curiam.*—Suit for the price of fifty timber-trees, sold and marked upon the ground, and to be taken away by the purchaser. The price was agreed upon. The suit was commenced before a justice of the peace. There was a recovery before the justice by the plaintiff; and so there was, on appeal, in the circuit court. The trees were cut and taken away by the defendant, at such time as suited his convenience. Upon such a contract, it seems, that the sale is complete when the trees are marked.

" We are unable to perceive the reason why this cause was appealed to this court.

" No question is made except upon the evidence. But the record does not purport to contain all the evidence.

" Again. On the evidence in the record, the case falls within the rule in criminal cases. The judgment is right

beyond not only a reasonable doubt, but beyond any doubt whatever.

"The judgment is affirmed, with ten per cent. damages and costs."

The above case does not seem to have received much consideration. No authority is cited. The only language in the opinion which supports the views of counsel for appellant, are the words: "Upon such a contract, it seems that the sale is complete when the trees are marked." The remark was not called for, for the action was upon an executed contract.

Before the action was brought, "the trees were cut and taken away by the defendant, at such times as suited his convenience." The defendant had severed the trees and taken them into his possession by removing them from the plaintiff's land, and then the plaintiff brought suit for the price agreed to be paid for the trees. The contract was no longer executory, and the defendant having severed and taken the trees, it would have been strange indeed if he were not held for the value of them. The object of the statute was to guard against, and not to protect frauds. *Eastburn* v. *Wheeler*, 23 Ind. 305. It made no difference "that the suit was brought upon the original express agreement, and for the price therein agreed upon." In truth, it should have been brought in no other manner, for the contract by being executed had become binding, and no longer within the statute of frauds.

It is a well settled rule, that in regard to all verbal contracts for the sale of lands, a substantial part performance takes them out of the operation of the statute. *Pearson* v. *East*, 36 Ind. 27; *Stater* v. *Hill*, 10 Ind. 176; *Moreland* v. *Lemasters*, 4 Blackf. 383. And in such case a court of equity will enforce a specific performance. 1 Story Eq. Jur. 754; Fry on Spe. Per. 252. But the question as to the validity of the contract was not before the court in *Wright* v. *Schneider*, *supra*, as counsel presume, for it is said in the opinion, "no question is made except upon the evidence." In *Selch* v. *Jones*, 28 Ind. 255, however, the question was directly

involved. Here the action was trespass for cutting and removing timber. The defendant answered, that he had a license to do the acts complained of, by virtue of a verbal contract for the sale of the trees cut and removed, and that the contract had been executed ; and this was properly held to be a good plea in bar of the action.

The court say:   " We think that the answer, though bad in form for argumentativeness, was good on demurrer, and was equivalent to the defence of license from the plaintiff. The contract for the timber not being in writing, and being for an interest in land, was not good under the statute of frauds, and the conveyance by Morrow passed the timber to the plaintiff and revoked the license, which otherwise would have been a good defence to the action for trespass.   But acquiescence by the plaintiff in the license from Morrow was equivalent to a new license from the plaintiff, and was good as a defence."

It is expressly held in the above case; that the contract for the sale of timber was a contract for an interest in land, and not being in writing, was void under the statute of frauds ; but as the timber was taken away under a license, the party was not liable as a trespasser.

Finally, counsel for appellant refers to Browne on the Statute of Frauds.   That learned author, in sec. 248, p. 251, lays down this rule, among others, for determining whether such contracts are within the statute of frauds :  " If the benefit of the soil is contracted for by the purchaser of the crop, if it be in the contemplation of the parties that the purchaser shall use the vendor's land in the interval between sale and delivery, for the purpose of raising the crop which when matured is to belong to the purchaser, then clearly the contract is for an interest in the land.   It is distinguished by form only from a lease of the land for that purpose; for it can make no difference whether the cultivation is to be by the purchaser himself or by his agent, the vendor.   *   *   'The legislature contemplated an interest in land which might be made the subject of sale.   I think,

therefore, they must have contemplated the sale of an interest which would entitle the vendee either to the reversion or to the present possession of the land.'"

The same learned author, in sec. 249, p. 252, says: "The general rule, therefore, furnished us by the cases we have had under review, would seem to be this: If the contract when executed is to convey to the purchaser a mere chattel, though it may be in the *interim* a part of the realty, it is not affected by the statute; but if the contract is in the *interim* to confer upon the purchaser 'an exclusive right to the land for a time for the purpose of making a profit of the growing surface,' it is affected by the statute and must be in writing, although the purchaser is at the last to take from the land only a chattel."

All the cases cited in support of the above doctrine relate to the sale of the annual products of the soil, except the case of *Smith* v. *Surman*, 9 Barn. & C. 561. In that case, the contract was not for the sale of growing timber, but for the timber at so much per foot; that is, the produce of the trees when they should be cut down and severed from the freehold. The doctrine stated in the above quotation from Browne is materially modified by that author in sec. 250, where he says: "But there is another doctrine upon this subject which has attracted much favor of late years, and that is that the application of the statute is to be determined by the character of the growing crop; verbal contracts for the *fructus industriales*, or growing grain, vegetables, etc., which are produced by periodical planting and culture, which at common law are considered as emblements, which go to the executor, and which are leviable in execution, being good, and verbal contracts for the *prima vestura*, or growing trees, grass, fruit, etc., which at common law go to the heir, as of the realty, being not good." See *Smith* v. *Dodds*, 35 Ind. 452; *Lindley* v. *Kelley*, 42 Ind. 294.

We turn now to the examination of the propositions contended for by counsel for appellee.

The technical meaning of the word "land" is well under-

stood among lawyers. " The word ' land,' and the phrases " real estate,' and ' real property,' include lands, tenements and hereditaments." 2 G. & H. 336. Thus it will be seen that the word " land," in its legal signification, embraces much more than the word literally imports, and of course the word, as used in the fourth specification of the first section of our statute of frauds, will be construed in connection with the definition given in the above statute. Hereditaments are included in the statutory definition of the word land ; " lands, tenements and hereditaments," is the language. " Hereditaments is the largest and most comprehensive word, including not only lands and tenements, but whatever may be inherited." 1 Cruise Dig. 54. See 1 Washb. Real Prop. 21 ; 2 Bl. Com. 16 ; Co. Lit. 2. Such is also the common law definition : " Land comprehendeth, in its legal signification, any ground, soil, or earth whatsoever, as meadows, pastures, woods, moors, waters, marshes, furzes, and heath. It has also in its legal signification an indefinite extent, upwards as well as downwards." 1 Cruise Dig. 54. See 1 Inst. 4; 4 Bl. Com. 18 ; 3 Kent. Com. 402. " The word land is comprehensive in its import, and includes many things besides the earth we tread on, as waters, grass, stones, buildings, fences, trees, and the like." *Green* v. *Armstrong*, 1 Denio, 554.

Growing trees are regarded as a part of the land to which they are attached. This is well illustrated by the rule in regard to what is termed " emblements," and as to what will pass to the executor, and what to the heir. Whatever the law will treat as " emblements " will, as between vendor and vendee, when the statute of frauds is applied, be regarded as " bare chattels," " and it is now well settled, that the term only extends to such crops as are the result of special labor and cultivation, and which commonly compensate such labor within the year." 3 Redfield Wills, 151. " The doctrine of emblements extends not only to corn and grain of all kinds, but to everything of an artificial and annual profit, that is produced by labor and manurance." 1 Williams Ex. 631. But growing fruits, grass, trees, and other products of the

soil, not produced annually by labor and cultivation, are not included in the term, but are regarded as a part of the land, and will pass to the heir.   Toller Law of Executors, 193 ; Roberts Frauds, 365 ;  1  Williams Ex.  631; 3 Redfield Wills, 152 ;  1 Denio, 554, 581;  1 Barb. 544 ;  27 Vt. 157; 35 Miss. 700 ;  45 N. H. 313 ;  33 Penn. St. 376.  The rule established between the executor and the heir, drawing the distinction between the *prima vestura* and *fructus industriales,* is important in the consideration of the question presented in this case, for it is the line of distinction now generally regarded as decisive.

Trees cannot be levied upon and sold as personal property. See authorities above cited.   So growing trees will pass to the mortgagee of land as a part thereof, and he may have an injunction to prevent the mortgagor, or other person, from cutting and removing them, if thereby his security is impaired. *Hutchins* v. *King,*  1  Wal. 53 ;  *Salmon* v.  *Claggett,* 3  Bland, 180 ;  *Brick* v. *Getsinger,*  1 Halst. Ch. 391.  See, also, *Waterman* v. *Matteson,* 4 R. I.  539 ;  *Page* v. *Robinson,* 10 Cush. 99 ; *Stowell* v. *Pike,*  2  Greenl.  387;   *Langdon* v.  *Paul,* 22  Vt. 205 ;  *Sanders* v. *Reed,* 12  N.  H. 558 ;  *Frothingham* v. *McKusick,* 24 Me. 403.

A trustee under a power of sale " cannot sell the timber from the land, nor the land reserving the timber." Perry Trusts, 724.

In England, a verbal contract for the sale of growing trees is clearly recognized as being within the statute of frauds as an interest in lands.   There is one case, which is referred to as an early English case by the appellant, and is sometimes referred to by text-writers as an authority.   The propriety of calling this case an authority is at least doubtful.   It is reported anonymously in 1 Ld. Raymond, 182, and the report consists of what Treby, C. J., told the other judges about a ruling he had made " at *nisi prius* at Guildhall," that he had held, that growing timber might be sold by parol " because it was but a bare chattel."  This is all there is of this case, and it is not strange that Hullock, B., should remark

in the case of *Scorell* v. *Boxall,* 1 Y. & J. 396, that he had "never heard this *dictum* referred to as an authority."

The case of *Crosby* v. *Wadsworth,* 6 East, 602, decided in 1805, is the leading English case upon this subject.   In this case, the plaintiff verbally agreed to purchase of the defendant a "standing crop of mowing grass," to be made into hay by the plaintiff.   Before the plaintiff had done any act, the defendant notified him that he could not have the grass, and sold it to another man.   The agreed price was tendered and refused.   This agreement Lord ELLENBOROUGH held to be a sale of an interest in land and within the statute of frauds. In *Teall* v. *Auty,* 4 Moore, 542, decided in 1820, there was a sale of growing trees, which were cut and carried away.   The court were of the opinion that "the agreement was originally for the purchase of an interest in land, for when it was made, the poles were growing."   Very similar is the case of *Smith* v. *Surman,* 9 Barn. & C. 561, decided in 1829. This was a case of a verbal sale of timber at so much per foot.   The timber at the time was "being cut down" by the vendor, the "most of it being actually felled."   BAYLEY, J., said, "The contract was not for the growing trees, but for the timber at so much per foot.   *   *   *   The vendor, so long as he was felling it and preparing it for delivery, was doing work for himself and not for the defendant."   For this reason the contract was held not to be within the statute. *Scorell* v. *Boxall,* 1 Y. & J. 396, (1827,) is the next case, and is directly in point.   This was an action for trespass for cutting and carrying away underwood.   The question presented was, whether the plaintiff, who had verbally purchased the underwood, had such a possession as would enable him to maintain the action.   ALEXANDER, C. B., said: "This is a mere parol contract for the sale of growing underwood, part of the freehold, and in direct violation of the statute of frauds.   It seems to me to be clearly a contract relating to the sale of an interest in land, which by the statute must be in writing."   *Evans* v. *Roberts,* 5 Barn. & C. 829, (1826) was on a verbal agreement for the purchase of "a

cover of potatoes, to be turned up by plaintiff." This was held to be a contract for the sale of chattels, and was said to be unlike " growing trees, which is the natural and permanent produce of the land, renewed from time to time without cultivation. * * * Now this contract only gives to the vendee an interest in that growing produce of the land which constitutes his annual profit." To the same effect are the cases of *Warwick* v. *Bruce,* 2 Maule & S. 205 ; *Parker* v. *Staniland,* 11 East, 362 ; *Sainsbury* v. *Matthews,* 4 Mees. & Wels. 343. In *Rodwell* v. *Phillips,* 9 Mees. & W. 501, a parol contract had been made for the purchase of a lot of growing fruits, and the question was, whether this contract was within the statute of 55 Geo. III, c. 184, requiring a stamp upon an agreement for an interest in lands. It was held that it was. Lord ABINGER, C. B., said : " Growing fruit would not pass to an executor, but to the heir ; it could not be taken by a tenant for life, or levied in execution under a writ of *fi. fa.* by the sheriff ; therefore it is distinct from all those cases where the interest would pass, not to the heir at law, but to some other person. Undoubtedly there is a case in which it appears that a contract to sell timber growing was held not to convey any interest in the land, but that was where the parties contracted to sell the timber at so much per foot, and from the nature of that contract it must be taken to have been the same as if the parties had contracted for the sale of timber already felled." *Smith* v. *Surman* was the case referred to by the learned judge.

But nowhere has the law upon this question been stated with so much force and clearness as by Chief Baron Joy, of the Irish Bench, in the case of *Dunne* v. *Ferguson,* Hayes, 540. In this case the defendant had sold the plaintiff five acres of turnips, and while they were growing, the defendant severed and converted a part of them to his own use, and trover was brought by the plaintiff. Among other things, the learned judge said : " At common law, growing crops were uniformly held to be goods ; and they were subject to all the legal consequences of being goods, as seizure in execution, etc. The

statute of frauds takes things as it finds them; and provides for lands and goods, according as they were so esteemed before its enactment. In this way the question may be satisfactorily decided. If, before the statute, a growing crop had been held to be an interest in lands it would bring them within the statute. * * * And as we think that growing crops have all the consequences of chattels, and are, like them, liable to be taken in execution, we must rule the points raised for the plaintiff."

Thus the law in England may be considered as settled, and the question, whether products of the earth constitute an interest in lands within the statute of frauds or not, is solved by reference to the subject-matter, as to whether it consists of *fructus industriales*, or is the mere spontaneous production of the earth. The decisions of the English courts are important, for the reason that " our statute of frauds is substantially that of Charles II. With the statute, the courts generally adopt the English construction as good authority." *Bowman* v. *Conn*, 8 Ind. 58.

Turning now to the American courts, we will find that the English decisions are very generally upheld. The case of *Green* v. *Armstrong*, 1 Denio, 550, is a leading case, and the identical question under consideration was before the court. The plaintiff had by a verbal contract purchased growing trees of the defendant, and the defendant had afterward forbidden the plaintiff to cut and remove them. In the opinion it was said: " The precise question in this case is, whether an agreement for the sale of growing trees, with a right to enter on the land at a future time and remove them, is a contract for the sale of an interest in land." It being the first time that the question had been before the court, the judge who gave the opinion said: " We are, therefore, at full liberty to adopt a broad principle, if one can be found, which will determine this precise question in a manner which our judgments shall approve." The court then approve the rules adopted in *Rodwell* v. *Phillips* and *Dunne* v. *Ferguson*, and distinguish between products which are the result of annual

labor and cultivation, and those of a spontaneous growth, and say, "These principles suggest the proper distinction." The authorities are referred to in this case and the subject ably discussed, and the contract made held to be clearly a contract for the sale of an interest in lands and within the statute.

The same question was presented in the case of *The Bank of Lansingburgh* v. *Crary*, 1 Barb. 542. The point there was, whether growing grass could be levied upon as a chattel under an execution against the same, by consent verbally given. The court held, after a full discussion of the subject, that the grass was "an interest in land," and "could not be seized as chattels until severed from the land."

In *Warren* v. *Leland*, 2 Barb. 613, the question arose as to the character of the writing required to convey growing trees, "they being an interest in lands." The subject was ably reviewed, and the case of *Green* v. *Armstrong* approved as being correct in principle.

Again, in *Pierrepont* v. *Barnard*, 5 Barb. 371, it was held, that "the trees were real estate, and could not pass, except by an instrument in writing." This case was carried to the court of appeals, and reversed upon another ground, which will become important in another part of this opinion. The fact, however, that growing trees were an interest in lands was firmly adhered to. See *Pierrepont* v. *Barnard*, 2 Seld. 279.

In *McGregor* v. *Brown*, 6 Seld. 117, the court, *per* EDWARDS, J., announced the same doctrine, and in reference to *Green* v. *Armstrong*, said: "This decision, as far as I am aware, has been received with approbation, and may be considered as the settled law of this State."

In *Silvernail* v. *Cole*, 12 Barb. 685, and in *Bennett* v. *Scutt*, 18 Barb. 347, the Supreme Court declares the law to be as above stated, and so does the court of appeals, in *Killmore* v. *Howlett*, 48 N. Y. 569.

This question has been before the Supreme Court of New Hampshire a number of times, and the court has uniformly

held that verbal contracts for the *prima vestura* were within the statute of frauds.    It was so held in *Putney* v. *Day*, 6 N. H. 430, and in *Olmstead* v. *Niles*, 7 N. H. 522.

In the case of *Kingsley* v. *Holbrook*, 45 N. H. 313, the question was directly before the court, and was elaborately discussed in the opinion given.    It was there said : " But the word land is a comprehensive term, including standing trees, buildings, fences, stones, and waters, as well as the earth we stand on, and all pass under the general description of land in a deed.   Standing trees must be regarded as part and parcel of the land in which they are rooted and from which they draw their support, and, upon the death of the ancestor, they pass to the heir, as a part of the inheritance, and not to the executor, as emblements, or as chattels.   Neither can they be levied upon and sold on execution, as chattels, while standing. This being the case when the statute of frauds was passed, it has since then been properly held, we think, that a sale of growing trees, with a right at any future time, whether fixed or indefinite, to enter upon the land and remove them, does convey an interest in the land."

In the State of Vermont, the same rule has been adopted and adhered to.    In the well considered case of *Buck* v. *Pickwell*, 27 Vt. 157, the cases were reviewed and the subject examined at length in an elaborate opinion by BENNETT, J., and it was held that an agreement for the sale of growing trees, with the right of the vendee to enter and sever them, and take them off at any future time, was within the statute, and must be in writing, to be available.    He refers to the English cases that distinguish between the *prima vestura* and *fructus industriales* as being correct in principle.

In *Ellison* v. *Brigham*, 38 Vt. 64, the subject was again considered.    This was a suit upon a verbal agreement, in which the defendant had contracted to cut down all the trees on a certain tract of land fit for logs, and deliver them at a mill.    The defendant refused to comply.    Held, that the contract was within the statute ; and it was said that the fact that the trees were to be made into logs was unimportant, for

"the logs contemplated by the contract were the trunks of the trees standing; they would be the trunks of the trees when delivered at the mill, and nothing else." The learned judge also remarked that "the inclination of the courts of England and in this country, at the present time, is to limit rather than extend the class of cases that are excepted from the operation of the statute." These cases were approved by the same court in *Sterling* v. *Baldwin*, 42 Vt. 306.

The same view of the law has been decidedly taken by the Supreme Court of Mississippi. The case of *Harrell* v. *Miller*, 35 Miss. 700, was an action to enforce a verbal contract for the sale of trees. An able opinion was given by HANDY, J., in which he refers to and approves the rule recognized in *Green* v. *Armstrong*, and in the English cases, and says: "When the statute speaks of lands, tenements, and hereditaments, it must be understood to refer to them, in such sense as the terms imported at common law; and, according to the principles above stated, growing trees must be considered as pertaining to the soil, and embraced by the terms of the statute." And thus stands the law in the State of Mississippi.

In Pennsylvania the decisions are to the same effect. In *Yeakle* v. *Jacob*, 33 Penn. St. 376, and in *Huff* v. *McCauley*, 53 Penn. St. 206, the subject was discussed and held as in the states above referred to.

In the case of *Pattison's Appeal*, 61 Penn. St. 294, it was again before the court, and in the opinion it is said: "It would strike the unprofessional mind with scarcely less surprise than it would the professional, if it were announced that the growing timber on a man's land might be held by a contract in parol, against everybody, whilst the soil itself could only be legally transmitted by an instrument in writing; that what we have been accustomed to consider an integrant part of the freehold, the growing timber, might be sold and transmitted with no more solemnity than a pile of boards at a sawmill, or bushels of wheat in a barn. * * * If such interests might pass by parol, or word of mouth, and become mere

chattel interests, they would in time be liable in the hands of owners, to seizure and sale by sheriffs and constables as personal chattels.   From such a condition of things nothing but *inextricable confusion could possibly follow.*   \*   \*   \*   The distinction in the English books between the *prima vestura* and the *fructus industriales* of land, namely, the natural growths and the products of agriculture, has always been regarded with us."   And thus the law in Pennsylvania is settled against the theory of the appellant.

In the State of New Jersey, the same rule has been substantially adopted.

In *Scotten* v. *Brown,* 4 Harring. Del. 324, it was agreed by parol that a party should have the proceeds of a certain meadow for three years as a compensation for clearing it.  Held an interest in land and within the statute. In the opinion, it is stated, that " it is well known that a distinction has long existed between perennial productions of the earth and the annual fruits of annual labor.   In almost all cases the latter is now regarded as a mere chattel."

Analogous to an agreement for the sale of growing trees by parol is the sale of ore in a mine.   When the ore is severed from the land in which it is imbedded, it becomes a mere chattel;  until then it is a part of the freehold.

In *Riddle* v. *Brown,* 20 Ala. 412, a verbal contract had been made for the right to "dig and carry away ore" from a mine, and it was decided that this agreement " was devoid of efficacy as a contract of sale, because not in writing," and within the statute.

*Anderson* v. *Simpson,* 21 Iowa, 399, was a similar case, and was decided in the same manner and upon the same grounds.

"An agreement for the sale of growing grass (*prima vestura*), growing timber, or underwood, growing fruit and hops, not made with a view to their immediate severance and removal from the soil and delivery as chattels to the purchaser, is a contract for the sale of an interest in land, as such things are not distinguishable from the land itself in legal contemplation until actual severance, and pass to the heir, and

not to the executor." Ad. Con. 54. Addison draws the distinction between *prima vestura* and *fructus industriales.*

The remarks of Judge Story, in his work on Contracts, vol. 2, sec. 1015 K, are entitled to great consideration :

"Where the contract is for things growing on the land, which are such as would go to the heir, it is within the statute ; when it is for such crops as would go to the executor, or may be sold on execution, it is a sale of chattels not within this clause. Another way of putting the distinction is between annual productions caused by the labor of man which are not within the statute, and the annual productions of nature not referable to the industry of man except at the period when first planted, which are within the statute. Under the former class are growing crops of grain and vegetables. Under the latter class are growing trees, fruit, and grass, not severed from the land. If they be severed from the land, they become of course mere chattels."

See, also, 1 Hilliard Con. 404, sec. 38 : "Growing trees are real estate, and can not pass, except by an instrument in writing. In some cases, importance has been attached to the stipulation that the trees are to be taken by the purchaser within a certain time. But the distinction is made, that an agreement for the sale of growing trees, with a right to enter on the land at any future time and remove them, is within the statute, but, after such sale, they become personal property and may be verbally transferred." See, also, note 5 and note *a,* same page. Also, see 4 Kent Com. (11 ed.) 517, and notes *d* and 2 and 3.

Viewed from another standpoint, it will be seen that the amended answer filed does not constitute a bar to the action as brought. It is alleged in the answer, "that about the time he" (appellant) "commenced to cut and remove said trees, as above stated, the plaintiff gave him notice not to cut and remove said trees from his said lands, which notice of plaintiff the defendant disregarded, and proceeded to, and commenced to, cut and remove said trees." If a verbal contract for the sale of growing trees amounts to a license merely to

enter upon the vendor's land, here was an express revocation of the license given in the case before any act was done in pursuance thereof by the vendee, and the admission of this constitutes one of the allegations in the answer filed. What is the effect of this?

A contract that is required to be in writing by the statute of frauds is not invalid if made by parol. "The statute only inhibits all actions brought to enforce it." *Hadden* v. *Johnson*, 7 Ind. 394. See, also, *Crosby* v. *Wadsworth*, 6 East, 602; Browne Frauds, 118. "It is only voidable, and not void." *Mather* v. *Scoles*, 35 Ind. 1. "But where the contract has been in fact performed, the rights, duties and obligations of the parties resulting from such performance, stand unaffected by the statute." *Stone* v. *Dennison*, 13 Pick. 1. See Browne Frauds, 114; 7 Ind. 397.

This action being for a trespass in unlawfully entering upon lands, a plea of license from the owner of the land to do the act complained of would be good as a plea in bar, for "a license will be a full justification for all acts done in pursuance of its terms." 2 Am. L. Cas. 752. A parol license to enter on lands will excuse what would otherwise be a trespass. Chit. Con. 326; Hilliard Vend. 125. "A dispensation or license passeth no interest, nor alters or transfers property in anything, but only makes an action lawful, which without it had been unlawful." *Thomas* v. *Sorrell*, Vaugh. 330, 351. A license confers only a privilege, and does not pass an estate, and may be revoked or countermanded at any time by the licensor. *Simpkins* v. *Rogers*, 15 Ill. 397; *Mumford* v. *Whitney*, 15 Wend. 380; *Cook* v. *Stearns*, 11 Mass. 527; Washb. Easments, 6; *Ex parte Coburn*, 1 Cow. 568. "A license cannot be made available in any way as a contract." Chit. Con. 426. In some instances a license may become irrevocable; as where the licensee has made expenditures upon the faith of the license, unless the licensee can be placed *in statu quo*. *Stephens* v. *Benson*, 19 Ind. 367; *Lane* v. *Miller*, 27 Ind. 534. "A license cannot be revoked

as to acts done under it. The revocation is prospective, not retrospective." *Snowden* v. *Wilas*, 19 Ind. 13.

A parol agreement for the sale of growing trees, the trees to be severed and taken from the land by the vendee, as in this case, will amount to a license for the vendee to enter upon the vendor's land, for the purpose of making such severance, and if such license is not revoked before the trees are severed, the title to the trees will vest in the vendee, and the license after severance will become coupled with an interest and irrevocable, and the vendee will have a perfect right to enter and remove the trees thus severed; but if before the trees are severed, the vendor should revoke such license, no title will pass to the vendee, and no rights will vest by virtue of such contract.

The following authorities, some of which have already been cited on another point, will fully support the views hereinbefore expressed: *Pierrepont* v. *Barnard*, 2 Seld. 284; *Drake* v. *Wells*, 11 Allen,. 141; *Giles* v. *Simonds*, 15 Gray, 441; *McNeal* v. *Emerson*, 15 Gray, .384; *Nettleton* v. *Sikes*, 8 Met. 34; *Heath* v. *Randall*, 4 Cush. 195; *Barnes* v. *Barnes*, 6 Vt. 388; *Mumford* v. *Whitney*, 15 Wend. 380; *Smith* v. *Benson*, 1 Hill N. Y. 176; *Russell* v. *Richards*, 1 Fairf. 429; *Riddle* v. *Brown*, 20 Ala. 412; *Bennett* v. *Scutt*, 18 Barb. 347; *Douglas* v. *Shumway*, 13 Gray, 498; *Erskine* v. *Plummer*, 7 Greenl. 447; 1 Washb. Real Prop. 8, 3 Am. ed.; Schouler Pers. Prop. 125; *Selch* v. *Jones*, 28 Ind. 255.

This leaves for our examination the seventh proposition stated by counsel for appellee. That is, that if the sale of the trees was a sale of the trees as chattels, it was void; because there was no money paid as earnest, nor part payment, there was no writing, and no part of said property was received by the appellant.

The seventh section of the statute of frauds and perjuries, 1 G. & H. 351, reads as follows:

" No contract for the sale of any goods, for the price of fifty dollars or more, shall be valid, unless the purchaser

shall receive part of such property, or shall give something in earnest to bind the bargain, or in part payment, or unless some note or memorandum in writing of the bargain be made, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

The price was more than fifty dollars ; nothing was paid in earnest to bind the bargain, nor in part payment, nor was any memorandum made in writing of the bargain. Did the defendant receive said property, or any part of it, so as to take the contract out of the statute ? To receive implies the concurrent acts of delivering by the vendor and acceptance by the vendee. It signifies a change of possession from the vendor to the vendee. A delivery is a parting with the power over property by the seller, with a view to its surrender to the purchaser. I Bouv. Dict. 453 ; *Cloud* v. *Moorman*, 18 Ind. 40; Wharton Law Dict. 223 ; 2 Parsons Con. 41.

Acceptance would be a taking of the possession and an assuming of the power over the property. The trees were not chattels while they were growing. Growing trees are a part of the real estate until they are severed. I Washb. Real Prop., 3d ed., pp. 8, 9 ; Browne Frauds, 260, sec. 143; Addison Con. 54; *Giles* v. *Simonds*, 15 Gray, 441 ; *Douglas* v. *Shumway*, 13 Gray, 498 ; I Denio, 550; and many other authorities hereinbefore cited.

While the vendor owns the real estate and the trees are standing and growing on it, the possession remains in him, and no delivery can take place short of transferring to the vendee the possession of and an interest in the real estate. There was no severance of the trees from the soil at the time the contract was made, June 25th, 1872. Owens commenced cutting the trees July 9th, 1872.

Although the answer says the plaintiff then and there delivered to the defendant, and the defendant then and there accepted, these expressions must be taken in connection with the other averments, and amount to nothing. At the time of the sale, the trees were standing and growing; all

that occurred amounted to an agreement upon the terms. Before a tree was cut, the money was offered and refused, and the contract rescinded, and the license to enter and sever and remove the timber revoked. No act of taking possession by the vendee, or of parting with it by the vendor, had ever occurred. The allegations in the complaint in regard to the trees constitute a part of the contract. The acts of delivery and acceptance, mentioned in the statute, are something over and beyond the agreement, of which they are a part performance. There must be some act over and beyond the words of a contract, to amount to a delivery. The seller must relinquish his dominion over the property and put it in the power of the vendee. Even in symbolical delivery this is the case; by delivering the key of the warehouse, or directing the bailee of the goods to deliver them to the vendee. Although it is true that it is not always easy to make an actual delivery of bulky and ponderous articles, there are other ways of satisfying the statute of frauds. The parties may put their contract in writing, or the purchaser may pay part or all the money. *Shindler* v. *Houston*, 1 Comst. 261; *Brabin* v. *Hyde*, 32 N. Y. 519; *Denny* v. *Williams*, 5 Allen, 1; *Snow* v. *Warner*, 10 Met. 132. The case of *Shindler* v. *Houston* is a leading case, in which all the authorities are reviewed, and it is referred to in the notes to 3 Parsons Con. 41, Smith Mercantile Law, 608, and 2 Kent Com., 11th ed., 502. In *Shindler* v. *Houston*, of the doctrine cited from the Pandects, that the consent of the party upon the spot is sufficient possession of a column of granite, which by its weight and magnitude was not susceptible of any other delivery, the court say that the Roman law has nothing in it analogous to our statute of frauds; and further, that it is fairly to be inferred that the consent of the vendor, that the purchaser should take possession, was subsequent to the sale.

In our opinion, the ruling of the court below was correct in sustaining the demurrer to the answer.

The judgment is affirmed, with costs.