JANUARY TERM, 1854; CIRCUIT SESSION IN SEPTEMBER, 1854;
JANUARY TERM, 1855;
AND AT THE
CIRCUIT SESSION IN SEPTEMBER, 1855.

---

PRESENT,

HON. ISAAC F. REDFIELD, CHIEF JUDGE.

HON. PIERPOINT ISHAM, } ASSISTANT JUDGES.
HON. MILO L. BENNETT, }

---

NATHAN BUCK, 2D *v.* GEORGE PICKWELL.

*Sale of growing trees. Statute of frauds. Contracts executed and
executory.*

An agreement for the sale of growing trees, with a right in the vendee to enter upon the
land at a future time, to take and cut them off, as he may want them, is a contract for the
sale of an interest in land; and unless it be in writing, no action can be maintained upon it;
nor can it, in any way, be made available, *as a contract,* so long as it remains executory.

If such a contract is for a valuable consideration, and is executed by the vendee by severing the trees from the freehold, the property in them, when cut, will become vested in the vendee. BENNETT, J.

The case of *Yale* v. *Seely et al.*, 15 Vt. 221, limited to this extent. BENNETT, J.

If the consideration of the sale be fully paid, and the vendee has entered upon the land at different times and cut portions of the timber as he wanted it, but has not taken, or become entitled to the exclusive possession of the land, upon which the remainder is growing, the contract, as to the trees which are uncut, is still executory; and no action can be maintained by the vendee against a person who enters upon the land and actually cuts and takes them away.

An exception in the deed of the land by the vendor to a third person, of the timber upon it, which he had previously sold to the vendee, is not such a memorandum of the contract, as is required by the statute of frauds, to make it valid as a contract.

*Semble.* That the memorandum required by the statute must contain the substantial terms of the contract itself, expressed with such certainty that they may be understood from the memorandum itself, or some other writing to which it refers, without resorting to parol evidence.

The statute of frauds, in reference to the sale of lands, is applicable to actions brought to enforce rights dependent upon and resulting from the contract, and in which it must be proved though not counted upon; and not merely to those actions in which the contract must necessarily be set out in the declaration.

TRESPASS for cutting down growing trees of the plaintiff, &c. plea the general issue; trial by the court, December Term, 1852,—PECK, J., presiding.

The plaintiff proved by parol testimony, in connection with the reservations in the deeds hereinafter mentioned, that in the year 1830 or 1831, one Ozias Story, who was then the owner of a part of lot No. 48 in Fairfax, sold to the plaintiff for the sum of $16.00, which the plaintiff paid to him, all the timber on a particular part of said lot which was supposed to contain about one and a half acres of land; that it was at the same time agreed between them that the plaintiff need not take it all off at one time, and that he might act his pleasure about the time; but it appeared from the testimony of said Story that he did not suppose that the plaintiff would want more than ten years for that purpose, but that nothing of that kind was said by either of them. This contract or sale was wholly by parol. In September, 1838, said Story deeded to Seneca E. Parks that part of said lot No. 48, which he had previously, owned, but in the deed to said Parks he excepted " the timber on " about one and a half acres on the east end of the swamp which I

"sold to Nathan Buck, 2d." The said Parks subsequently deeded said premises to one Walker, who deeded them to one Carpenter, and the said Carpenter, in September, 1843, deeded them to one Hiram H. Story. All of these deeds contained an exception similar to that in the deed from Ozias Story to Parks. From these reservations and from parol testimony, the court found that all of said grantees, at the time of their several purchases and at the time of receiving their respective deeds, knew, of the contract between the plaintiff and Ozias Story and that the plaintiff still claimed under it, and that they also knew the extent of the plaintiff's claim, and the limits or boundaries of the piece of land upon which the timber was sold to the plaintiff, and that they all recognized and acknowledged the plaintiff's right to said timber, and his right to enter upon the land from time to time for the purpose of cutting and taking it off.

The defendant introduced a deed from Hiram H. Story to William Pickwell, dated April 18, 1845, in which the premises conveyed were described as commencing at the north-west corner of lot No. 51, accompanied with parol proof from which the court found that the north-west corner of lot No. 48 was intended instead of No. 51, and that the premises intended to be described and conveyed, were a part of that portion of lot No. 48, which was conveyed to said Story by said Carpenter, the remainder of the description in said deed, with the north-west corner of No. 48 as the starting point, being applicable to said land. The defendant also introduced a deed, dated April 17, 1849, from said William Pickwell to the defendant of that part of lot No. 48, which would be embraced in the description in said William Pickwell's deed from Hiram H. Story had it commenced at the north-west corner of No. 48, instead of lot No. 51. The description in the deed to the defendant commenced at the north-west corner of No. 48, and covered the land upon which the timber stood, which the plaintiff purchased of Ozias Story. Neither of the deeds from Story to William Pickwell, or from him to the defendant, contained any exception, but the court found from parol testimony, that the timber on the acre and a half piece, which was sold by Ozias Story to the plaintiff was not included in the purchase of either the said William Pickwell or the defendant, and that it was intended by all the parties to both of

said deeds, to have had an exception made of it in said deeds, but that it was omitted by mistake,— and that all the parties to said deed had the same knowledge respecting the plaintiff's rights and claims that the previous grantees had, and that they, at the time of receiving their several deeds, recognized and acknowledged the plaintiff's right to the timber on the said acre and a half piece.

It appeared that within five or six years after his purchase, the plaintiff cut and took off a small portion of the timber from said lot,— that during the ten years next following he did not cut any, but that he cut and took off some in the years 1847, 1849 and 1850, and the court found that he had never abandoned his claim to the timber, or his right to enter upon the land for the purpose of cutting it, but had always treated it as a subsisting right. And it further appeared that after the defendant took his deed and went into possession under it, he admitted that the timber on said acre and a half belonged to the plaintiff, and that he went on to the land with the plaintiff and marked out the land with the same limits which Story had fixed in his sale to the plaintiff, for the purpose of defining the right of the plaintiff to the timber. In February 1852, the defendant cut the timber then remaining on said acre and a half, and drew it off; and it appeared that a day or two after he had so cut and taken off the timber, the defendant said he knew, when he cut it, that it belonged to the plaintiff, but that he had been told that the plaintiff could not hold it. The plaintiff objected to the introduction of the deed from Hiram H. Story to William Pickwell, and to all parol testimony respecting it, but both objections were overuled and the deed and testimony respecting it admitted. The defendant objected to the introduction of the parol testimony respecting the plaintiff's contract with Ozias Story, and the subsequent recognition of that contract by the grantees of the said Story, but the court decided that it was admissible in connection with the reservations in the deeds and between these parties, and upon the facts found from the testimony as above detailed, rendered judgment in favor of the plaintiff for the value of the timber taken by the defendant. Exceptions by the defendant.

*A. O. Aldis* and *H. E. Hubbell,* for the defendant.

The contract between Story and Buck not being in writing is void by the statute of frauds.

The reservation in the deed from Ozias Story to Parks, and in the other deed, is no sufficient memorandum in writing within the statute.

The contract was shown wholly by parol evidence.

A sale of growing trees is the sale of an interest in land. Especially must it be so, when they were to remain on the land ten years, or, as the plaintiff claims, more than twenty years.

In England there have been conflicting decisions, but the rule is now considered as settled, that a contract for the sale of a crop which is the natural produce of the soil, like growing trees, is a contract for the sale of an interest in land within the statute.

A distinction is made between cultivated crops, *fructus industriales*, and the natural produce of the soil. Chitty on Contracts, 270. *Jones* v. *Flint*, 10 A. & E. 753. *Rodwell* v *Philips*, 9 Mees. & Well. 501–505. *Crosby* v. *Wardsworth*, 6 East 602. *Teal* v. *Auty & Dibb*, 2 Bro. & Bing. 99. *Liford's Case*, 11 Coke, 48. *Yale* v. *Seely*, 15 Vt. 221.

*H. R. Beardsley* and *A. Soule*, for the plaintiff.

The statute of frauds has no application to the present case.

1. The contract was fully executed by the receipt of the purchase money on one side, and possession taken of the property by the other side. It was not an agreement to sell, but a sale, and possession taken under the sale.

2. This is not an action brought upon any contract, for any interest in lands, within the meaning of the statute.

3. The case shows that after the defendant purchased the premises in question, he and the plaintiff went on and marked out the piece of land on which was the timber claimed by the plaintiff, under his purchase from Ozias Story.

This act of the defendant was equivalent to making a new sale to the plaintiff, and possession taken under it, or at least it was a direct confirmation of the previous purchase from Ozias Story, and it is not easy to discover, how in this aspect of the case, the statute of frauds can have any application.

The opinion of the court was delivered, at the circuit session in September, by

12

BENNETT, J. The important question presented by this bill of exceptions is, whether an agreement for the sale of growing trees, with a right to the vendee to enter upon the land at such future time, to cut and take them off, as might be his pleasure, is a contract for the sale of an interest in land.

The action is trespass for cutting and carrying away the trees, and the plaintiff claims title to them by reason of a parol contract of purchase, made with Ozias Story, while he was the owner of the premises; and the defendant attempts to justify the cutting, upon the ground, that he subsequently acquired a title to the premises, as derived from this same Ozias Story. To enable the plaintiff to succeed, he must make out a title to the trees cut by the defendant. The case finds that some 21 or 22 years before the time of trial, and while Story was the owner of the premises, he sold the plaintiff, by a parol contract, all the timber on a certain part of the premises, supposed to be about one and a half acres, for $16, (which was paid,) and that the plaintiff might act his pleasure about the time when he took it off; though it appeared that Story, at the time, supposed that the plaintiff would not want more than about ten years to get it off in; yet nothing of the kind was said between the parties to the contract. This is the first time, that I am aware of, that this court have been called upon to decide this precise question; although it has arisen in the English courts, and in some of those of our sister states, and has received very different considerations by courts and individual judges; and it is useless to attempt to reconcile all the decisions and dicta which have been put forth on that section of the statute, which we are considering; and it was well said by Lord ABINGER, in the case of *Rodwell* v. *Philips*, 9 M. & W. 505, that "no general rule has been laid down in any one of the cases, that is not contradicted by some others." We feel then fully authorized to determine the question now before us, upon principle, if to be found, and in such a manner as will commend itself to our approbation. Our statute as well as the English statute, provides that no action shall be brought on any contract for the sale of lands, tenements or hereditaments, *or of any interest in or concerning them*, unless the contract shall be in writing, &c."

The decisions of the English courts under their statute, as well as those of our sister states, under similar statutes should of course

be consulted, and a rule be extracted from them, if practicable. But it is much to be regretted that cases are so conflicting, and that many of the older cases have been decided upon shadowy distinctions, which in later cases, it has been found necessary to abandon.

It may, perhaps, with some degree of certainty be said, that at the present day, a contract for the sale of growing crops, produced annually by labor and the cultivation of the earth, and which are included within the meaning of the term "emblements," is not a contract for the sale of land, or any interest in it, or concerning it, and that it is not material whether they have come to maturity or not at the time of the sale; or whether they are to be cut and taken off of the ground by the vendor, or the vendee.

There would seem to be some reason for making a distinction between a growing crop of grass or growing trees, and a field of wheat or corn or other emblements. Emblements seem to be distinct from the real estate, and subject to many of the incidents attending personal chattels. They go to the executor upon the death of the owner of the land, and not to his heirs, and they may be levied upon and sold upon execution like other personal chattels, as was held in *Whipple* v. *Foot*, 2 Johns. 418, and this without regard to the state of maturity which they are in. It would seem to follow that the owner should have power to make sale of them by a parol contract. But the word *land* is comprehensive in its meaning, and comprehends growing grass and standing trees, as well as houses and other buildings, and all pass under a general designation of land in a deed. Standing trees must be regarded as part and parcel of the land, in which they are rooted, and from which they draw their support, and upon the death of the ancestor they pass to the heir as a part of the inheritance, and not to the executor or administrator, as is the case with emblements, and personal chattels generally; neither can they be levied upon and sold upon an execution as a chattel. The case of *Dunn* v. *Ferguson*, cited in 2 Steph. N. P. 1971, from Hayes, (Irish) 542, marks well the distinction, and the grounds upon which the sale of a growing crop is not a contract for an interest in land. The case was, the defendant sold, by verbal contract, to the plaintiff a crop of turnips, which he had previously sown; and some time after, and while the turnips were in the ground, the defendant dug them and carried them

away. Chief Baron JOY says, "whether there has been a contract concering an interest in land, or whether it merely concerns goods and chattels, must depend upon the question, whether a growing crop is goods and chattels;" and upon this, he says, "the decisions have been very contradictory; a result always to be expected when the judges give themselves up to fine distinctions."

The court in that case, base their decision upon the ground that at common law, growing crops were uniformly held to be goods, and subject to all the leading consequences of being goods, and that the statute of frauds took things as it found them, and provided for lands and goods, according as they were esteemed at the time of its enactment. This seems to put the case on some tangible ground.

If before the statute, a growing crop had been held to be an interest in lands, under the statute, a contract respecting it must have been, to give it vitality, in writing. We think the whole current of modern law is in conformity to the distinctions marked out in the case of *Dunn* v. *Ferguson*, and it is thus put upon some rational ground. It would seem to follow as a necessary corrollary, that a contract for the sale of standing trees, with a right, at a future time, to enter upon the land to remove them, did concern an interest in lands; but it may not be amiss to examine some of the leading cases.

It was so held in *Putney* v. *Day*, 6 N. H. 430, and in a well considered case of *Green* v. *Armstrong*, 1 Denio, 550. See also *Warren* v. *Leland*, 2 Barb. 614, 618, where it was again held that growing trees are an interest in land; and that they, as long as they are annexed to the land, and are not actually, nor in contemplation of law, severed therefrom, cannot be sold by verbal contract.

In the case of *Scoovell* v. *Boxall et al.*, 1 Younge & Jervis (Exchequer Rep.) 395, it was held that the sale of growing underwood to be cut by the purchaser is a contract for an interest in land, and must be in writing. In this case, it did not appear at what time the vendee was to cut the underwood, or what state it was in, as to its growth, at the time of the contract, or whether the price was dependent upon the quantity produced.

In *Teal* v. *Auty*, 2 Brod. & Bing. 99, it was held that a sale of growing trees for hop-poles was a contract for an interest in land and must be in writing. There are several cases, in which it has been held, that a contract for the sale of growing grass, concerns

an interest in land, and must be in writing, and these cases, I apprehend, must stand upon the same ground, as contracts for the sale of growing trees. In neither case would the subject matter of the sale be emblements, and go to the executor or administrator as a chattel, and neither could they be sold in execution, as a chattel. See *Crosby* v. *Wadsworth*, 6 East. 602. *Carrington* v. *Roots*, 2 M. & W. 248. *Rodwell* v. *Philips*, 9 M. & W. 501, and *Jones* v. *Flint*, 10 Adolp. & Ellis, 753. The case of *Smith* v. *Surman*, 9 Barn. & Cres. 561, seems to stand upon peculiar ground. The standing timber was sold for so much a foot after the owner had commenced cutting, and had actually cut two trees, and by the contract the vendor was to cut and deliver the rest, and this was held not to be a contract for an interest in land. The timber was to be made a chattel by the seller, and the construction given to the contract was, that the vendee purchased the trees after they shall have been severed from the freehold. This then may well be treated as an exception, to the common case of selling standing timber. I am aware that it has been maintained by highly respectable authority that a sale of standing timber may be made by verbal contract, and such was the decision of a most distinguished court of a sister state, in the case of *Claflin* v. *Carpenter*, 4 Met. 580; and such seems to have been the opinion of the courts in Connecticut and Maine. See *Bostwick* v. *Leach*, 3 Day, 484, and *Erskine* v. *Plummer*, 7 Greenl. 447. This notion evidently had its origin from Ch. J. TREBY, who is reported to have held at nisi-prius, that the sale of timber growing upon land need not be in writing; and upon the report of this nisi-prius decision to the other judges, POWELL, J., is said to have assented to its correctness; see 1 Lord Raymond 182; and in Buller's N. P., p. 282, it is adopted as law, and it seems to be cited with approbation by HOLROYD, J., in *Mayfield* v. *Wadsley*, 3 Barn. & Cres. 364. But in the case of *Scoovell* v. *Boxall*, before cited, it is treated as a *dictum*, and the case itself most expressly overrules it; as does also the case of *Teal* v. *Auty*. As we hold that the contract proved by the parol testimony of Story, constituted a sale of an interest in land, and as this action is founded upon property, the plaintiff has failed to make out a right to maintain it, unless there is other ground upon which he can stand.

Though the statute does not declare or make absolutely void a verbal contract for the sale of an interest in land, but simply enacts that no action shall be maintained thereon; yet it cannot be made available in any way *as a contract*, so long as it remains executory. See *Carrington* v. *Roots*, 2 M. & W. 248. If, however, the contract is for a valuable consideration, and has been executed by the vendee, by his actually severing the trees from the freehold, under the contract, the property in the trees would doubtless, when cut, vest in the vendee and become his. This is the extent that the case of *Yale* v. *Seely et al.*, 15 Vt. 221, goes, though the marginal note of the case might seem to go further. This would seem to follow, from the fact that though, at law, no action could be maintained on a contract, within the statute of frauds, upon the ground of *part performance*; yet this is a ground upon which equity would uphold it, and it would not do to say that the law will lend its aid to disturb rights acquired by a part peformance of a contract, and which would be sufficient to induce a court of equity to decree a *specific performance*. It is claimed by the plaintiff, that the contract in the present case, was fully executed. It is true the purchase money had been paid, and the vendee had entered upon the land, and had cut and took off a part of the timber, as he wanted it, from time to time; but the timber for which this action was brought, was left standing, and was cut and taken away by the defendant.

The verbal contract as detailed in the testimony of Story, did not purport to give to the plaintiff the right of the exclusive possession of the land upon which the timber sold was standing. All that it fairly imported was a transfer of the timber as standing, and a right, at a future time, to enter upon the premises and cut and take it away, from time to time, as the plaintiff might want to use it. As far as the plaintiff had cut and taken away the timber, so far it may have vested in him; but as far as it remained uncut, so far the contract remained executory. No actual or constructive possession of the trees uncut, was taken; and no possession had been taken of the land. At most, the plaintiff had only exercised the right of entry, as to the land itself, which is all the contract purported to give. There is, then, no good ground to say that this contract was fully executed. It is well settled, that at law, a part

performance of a verbal contract will not exempt it from the operation of the statute of frauds. *Adams* v. *Townsend,* 1 Met. 483. *Hibbard* v. *Whitney,* 13 Vt. 21.

In the deed of Ozias Story to Seneca E. Parks, the grantor excepts from the conveyance "the timber on about one and a half acres of land on the east end of the swamp, which he had sold to Nathan Buck, 2d," the present plaintiff; and a similar exception is contained in the several intermediate conveyances down to Hiram Story; but the exception is dropped in the deeds from Hiram Story to Pickwell, and from Pickwell to this defendant, though the case finds that at the several times they purchased, they had full notice of the verbal agreement of the sale of the timber by Story to the plaintiff. We apprehend that the execution of the deed by Ozias Story to Seneca E. Parks, containing the exception of the timber he had previously sold to the present plaintiff, cannot be tortured into any such *memorandum* of the contract between the plaintiff and Story, as the statute of frauds requires, to exempt the contract from its operation. It is not a paper executed by Story to the present plaintiff; and it contains no specification of the terms of the parol contract whatever, between Story and the plaintiff, and no allusion to them. To hold that the exception in Story's deed, is a sufficient *memorandum,* would be in effect to repeal the statute of frauds, and to let in all the danger of perjury, which it was the intention of the statute to guard against. The rational rule seems to be, that the *memorandum* must contain the substantial terms of the contract expressed with such certainty, that they may be understood from the contract itself, or some other writing to which it refers, without resorting to parol evidence. See *Parkhurst* v. *Van Cortlandt,* 1 John. Chan. 273; same case, 14 John. 15. *Trustees of the B. Church of Ithica* v. *Bigelow,* 16 Wend. 28. *Blagden* v. *Bradbear,* 12 Vesey 466. *Seagood* v. *Meale & Leonard,* Prec. in Chan. 560. *Clerk* v. *Wright,* 1 Atk. 12. If the deed of Story does not contain a sufficient memorandum of the contract, it is quite clear it cannot be helped out by parol evidence of the terms of the agreement.

We think if this action had been against Story, it could not have been maintained, even though he had remained the owner of the premises, and had committed the acts complained of. Much

less can it be maintained against the defendant, his grantee, through intermediate conveyances, and whose immediate grantor had upon the record a deed without any reservation and who conveyed to this defendant without any reservation. Though the defendant, when he purchased the premises, might have recognized and treated the plaintiff's right to the timber as valid, under the contract with Story, yet that cannot make that pass by parol which the statute of frauds requires shall only be passed by writing. In *Scoovell* v. *Boxall*, before cited, it was held that the plaintiff, who had purchased the growing underwood by parol, had no such possession as would enable him to maintain trespass, even as against third parties, who stood as strangers to the title, and we think this was sound. The action was substantially based on title, and the title dependent wholly on the verbal contract, which was inoperative to convey a right. We do not apprehend that the meaning of the statute is, that the action must be such, to bring the case within the statute, that the contract must necessarily be set out in the declaration; but that it applies to cases where the action is brought substantially to enforce rights dependent upon, and resulting from the contract.

This view of the case renders it unimportant to decide the question whether parol evidence was admissible at law, to show the mistake in the deed of Hiram Story to William Pickwell, by beginning at the northwest corner of lot No. 51, instead of the northwest corner of lot No. 48, as it should have done, to include the lands upon which the timber in question was standing.

The result must be a reversal of the judgment of the county court, and the cause is remanded.