Hon. H. HENRY POWERS,
Hon. WHEELOCK G. VEAZEY, } ASSISTANT JUDGES.
Hon. JOHN W. ROWELL,

---

### G. F. O. KIMBALL *v.* R. P. SATTLEY.

*Chattel Mortgage.    Growing Crops.*

1. The owner of land may make a valid chattel mortgage of a growing crop that he has planted, which is superior to the lien acquired by another creditor's subsequent attachment.
2. The mortgagor of a farm, in possession, and after condition broken, may make a valid chattel mortgage of the growing grass thereon, which is superior to the lien acquired by another creditor's subsequent attachment.
3. The description in the mortgage was : " also all the grass and oats and corn now growing on two hundred and thirty acres of said farm," the farm being properly described ; *held, prima facie* sufficient.
4. The words " not exempt from attachment," as used in the act of 1878, but left out of the R. L., were not a restriction or limitation as to personal property that might be mortgaged.
5. R. L. s. 1965, chattel mortgage act, construed.

TRESPASS for two hundred tons of hay, one hundred bushels of wheat, and five hundred bushels of oats. By consent of the parties judgment *pro forma* was entered for the plaintiff. The facts were agreed on as follows:

November 25th, 1874, the defendant executed a legal mortgage of his farm in Ferrisburgh, in this State, to the National Life Insurance Company, to secure the payment of $11,000, expressed in promissory notes, which mortgage was duly recorded. The defendant was then and has since been in possession of the farm; and the notes are outstanding and unpaid.

April 14th, 1879, the defendant, by chattel mortgage duly executed and recorded, conveyed certain farm stock and personal property upon said farm to B. W. Field and W. F. Hindes, executors of Abram Sattley's will, to secure the payment of $420.20. August 7th, 1879, the defendant, by chattel mortgage duly executed and recorded on the following day, conveyed to said National Life Insurance Company said farm stock, subject to said chattel mortgage of April 14th, and also other personal property upon said farm, to further secure a part of its said mortgage debt of November 25th, 1874, then overdue. August 29th, 1879, said National Life Insurance Company purchased said claim of said Field and Hindes, executors, and took and had recorded an assignment of said chattel mortgage of April 14, 1879, securing the payment thereof.

June 21, 1880, the defendant, by a mortgage signed and sealed by him in presence of two attesting witnesses and acknowledged by him before a justice of the peace, conveyed to said National Life Insurance Company certain personal property on said farm, and, as stated therein, " also all the grass and oats and corn now growing on two hundred and thirty acres of said farm," to further secure two thousand dollars of the indebtedness of November 25, 1874, then overdue and secured by mortgage on said farm as aforesaid, which said mortgage of June 21, 1880, contained an affidavit, subscribed by the mortgagor and mortgagee, that it was made for the purpose of securing the debt described in the condition thereof, and for no other purpose, and that the said debt was a just one honestly due and owing from the mortgagor to the mortgagee, and also contained a certificate of a justice of the peace that said affidavit was subscribed and sworn to by the mortgagor before him, and the certificate of a notary public that said affidavit was subscribed and sworn to by the mortgagee before him. And said mortgage of June 21, 1880, was on June 23,

1880, duly recorded in the records of mortgages of personal property in the town clerk's office in said Ferrisburgh.

September 3, 1880, said Field and Hindes sued out a writ against said defendant on other indebtedness held by them against him, which writ was served by the plaintiff in this suit, who was, when he served it, deputy sheriff. September 4, 1880, the plaintiff, as sheriff, made legal attachment of all the hay and all the grain now in dispute. At the time said writ was served, the hay and grain grown on said farm in the season of 1880 were in the buildings upon the farm. The writ was duly entered in Addison County Court, and at the June Term, 1881, judgment was rendered for the plaintiff therein to recover $3,357.78.

October 4, 1880, the said Insurance Company, by its proper officer, executed upon the mortgage of June 21, 1880, a writing in the following words: " The National Life Insurance Company hereby consents to the sale of any part or the whole of the hay grown and cut on the farm mentioned in this mortgage, by the said mortgagor, he accounting to said company for the avails of such sale, said avails to be applied upon the debt secured by this mortgage, and said company hereby appoints the said mortgagor its agent and bailee for the purpose of baling and marketing any or all of said hay, he to account for the avails to be applied as aforesaid." On October 7, 1880, this writing was recorded on the margin of the record of said mortgage in the town clerk's office of Ferrisburgh. A part of the hay grown on said farm in the season of 1880 was sold by the defendant, after said writing of October 7, 1880, was executed and recorded, who paid over to said National Life Insurance Company the avails thereof, to be applied according to said writing; and the rest of the hay and all the grain grown on said farm in that season were consumed on said farm by the farm stock mortgaged as aforesaid. After said hay and grain of the season of 1880 had been disposed of and consumed as aforesaid, execution regularly issued upon said judgment of Field and Hindes, and was returned unsatisfied for want of property whereon to levy; whereupon this suit was brought.

*Hard & Safford*, for the defendant.

The act of 1878 permits the mortgaging of *personal property*, except such as is exempt from attachment. 1 Hill. Mort. (4th Ed.), 7; *Jones* v. *Richmond*, 10 Met. 481; *Winslow* v. *Ins. Co.* 4 Met. 306; *Barnard* v. *Eaton*, 2 Cush. 294, 303. Growing grass is not personal property and is exempt from attachment.

Jones Chat. Mort. 145, and cases cited; *Washburn* v. *Burrows*, 1 Exc. 107 ; *Carrington* v. *Roots*, 2 M. & W. 248 ; *Crosby* v. *Wardsworth*, 6 East, 602 ; *Jenks* v. *Smith*, 1 Denio, 580 ; *Buck* v. *Pickwell*, 27 Vt. 157, 163. The *hay* attached by the plaintiff was not in existence when the chattel mortgage was given. A *part of it* then existed, and if the intention of defendant was to mortgage both the grass which had grown and which might thereafter grow, he has not properly described the property. Jones Chat. Mort. 155, 482, 483 ; *Robinson* v. *Holt*, 39 N. H. 557. As demonstrated above, growing grass is not a crop; but in those cases where the mortgage of a crop has been upheld, it " must be so described as to be capable of identification." Jones Chat. Mort. 56, 138. But if this mortgage purported to convey a right to after-acquired property, it would give only an equitable right to be enforced by taking possession after a demand. *Holroyd* v. *Marshall*, 10 H. L. Cas. 191. At most, no present interest was conveyed, only a power; an interest does not arise until the power is exercised. *Reeve* v. *Whitmore*, 4 DeG. J. & S. 1, 18. It will be observed that neither the mortgagor nor mortgagee has taken any action under the mortgage since its execution. A mortgage given to secure a debt overdue is the same as a mortgage to secure a debt payable on demand. A chattel mortgage payable on demand does not become absolute until a demand is made. *Ely* v. *Cornley*, 19 N. Y. 496 ; *Belding et al.* v. *Read*, 3 H. & C. 954 ; *Toms* v. *Wilson*, 116 E. C. L. R. 442.

*F. E. Woodbridge* and *Pitkin & Huse*, for the plaintiff.

The mortgage of the grass and grain was valid as against the attaching creditor. Jones Chat. Mort. ss. 140, 146, 555, 556 ; 2 Wait Act. & Def. 172, 173, 217 ; *Cudworth* v. *Scott*, 41 N. H. 456. The objection that grass is part of the realty has no force in this case. It is well settled in this State that the mortgagor of real estate in possession after the expiration of the law day is considered as the tenant at sufferance of the mortgagee. He has a right to take and have the grass in case and only in case he is suffered to remain. He may, then, mortgage it. Jones Chat. Mort. ss. 114, 146. Regarding the grass as part of the realty of

the mortgagor, this mortgage was sufficient in its character and the manner of its execution to convey any interest in realty. The title having passed to the mortgagee could not be revested by the severance of the grass—especially while it remained on the premises. The property would pass by force of the contract and without deed as fast as it was severed. *Yale* v. *Seeley*, 15 Vt. 157 ; *Buck* v. *Pickwell*, 27 Vt. 157 ; *Fitch* v. *Buck*, 38 Vt. 683. It passed to the mortgagee as his absolute property in law, for the debt was overdue. No change of possession was necessary, for the mortgagee never owned it as a chattel. *Fitch* v. *Buck*, *supra ; Leavitt* v. *Jones*, 54 Vt. 423.

The opinion of the court was delivered by

VEAZEY, J. June 21, 1880, the National Life Insurance Company held a mortgage on defendant's farm to secure the payment of $11,000, expressed in promissory notes, then overdue, this mortgage being dated in 1874. It also held on same date, June 21, a chattel mortgage on some stock and other personal property on the farm, as further security for a part of this debt. The defendant was in possession when the mortgages were given, and has so continued ever since, and on the day named conveyed to this company, by a chattel mortgage in form, but executed with all the formality required in the execution of a mortgage of real estate, certain personal property on said farm, and as stated therein, " also, all the grass and oats and corn now growing on two hundred and thirty acres of said farm," to further secure $2,000 of said indebtedness. This mortgage was duly recorded June 23d, in the records of mortgages of personal property. On the 3d of September, 1880, after the grass and grain had been harvested and stored in barns on the farm, certain creditors of the defendant caused it to be attached as his property. The defendant afterwards disposed of this hay and grain under the authority of the mortgagee, a part by sale, and a part by consumption on the place. Thereupon the plaintiff, who was the attaching officer, brought this suit in trespass and trover against the defendant who was the mortgagor.

The question is as to the effect of the mortgage given June 21.

It was a good conveyance between the parties; but did it create a prior lien in the mortgagee as against said attachment?

As to the grain described in the mortgage, the mortgagee's lien was superior under the chattel mortgage act; because the owner of land may make a valid mortgage of his crop that he has planted and *before* it is harvested as well as after. This is upon the principle that, although the crop intended to be conveyed is not at the time of the mortgage in actual matured existence and in that form actually belonging to the mortgagor, yet it potentially belongs to him as an incident of other property then in existence and belonging to him. In the language of Chief Justice HOBART: "Land is the mother and root of all fruits. Therefore, he that hath it may grant all fruits that may arise upon it after, and the property shall pass as soon as the fruits are extant." *Grantham* v. *Hawley*, Hob. 132; *Evans* v. *Roberts*, 5 Barn. & Cress. 836; Jones on Chattel Mortgages, s. 140, and cases cited in the notes thereto. The doctrine of potential possession is restricted to cases where the property producing the product, growth or increase belongs to the mortgagor, and is not extended to mere possibilities or expectancies of acquiring property without any present interest in it. The Vermont Chattel Mortgage act provided at the time this mortgage was executed that " all personal property *not exempt from attachment* . . . shall be subject to mortgage," &c. It is contended that this clause, italicised for convenience of reference here, operated as a restriction or limitation as to personal property that might be mortgaged. We think that clause was never intended to have that effect. The object of the act was not to make chattel mortgages lawful, because they were lawful before by the common law, but to make the public record take the place of possession, and thus overcome the rule in this State that a mortgage of non-exempt property, without change of possession, is invalid as against a subsequent attaching creditor or purchaser. The necessity extended only to non-exempt property, and so we think these words were inadvertently and unnecessarily incorporated at first. In the Revision of 1880, they were left out without changing the scope of the act. The general rule is that any property which is capable of absolute sale may be mortgaged.

*Dorsey* v. *Hall*, 7 Neb. 460. Or as expressed by Powell, page 25 : " Everything which may be considered as property, whether, in the technical language of the law, denominated real or personal property, may be the subject of a mortgage."

The more important question is whether the mortgage was valid as to the grass, as against this attachment. The plaintiff contends it was not, on the ground that growing grass is not personal property. He claims there is a fundamental distinction between the products of land resulting from the annual labor of man in sowing as well as reaping, and such products as result from natural growth without planting.

Although the cases are not uniform, there is abundant authority holding or recognizing the distinction to the effect that crops, like corn, wheat, rye, potatoes, &c., called *fructus industriales*, are considered as the representatives of the labor and expense bestowed upon them, and regarded as chattels while still growing ; and as such go to the executor instead of the heir, and may be seized on execution as chattels, and may be sold or bargained by parol ; while growing grass and trees and fruit on trees, called *fructus naturales*, are, in contemplation of law, a part of the soil of which they are the natural growth, and descend with it to the heir, and until severed cannot be seized on execution, and under the Statute of Frauds cannot be sold or conveyed by parol.*

But if the owner of the fee of the land, by a conveyance in writing, sells these natural products of the earth, which grow spontaneously and without cultivation, to be taken from the land, or sells the land reserving them to be cut and removed by himself, the law regards this as equivalent to an actual severance. Browne Frauds, s. 236. Question is made in the books whether a chattel mortgage of such products *by the owner of the land* can be

---

* *Grantham* v. *Hawley*, Hob. 132 ; *Evans* v. *Roberts*, 5 Barn. & Cress. 836 ; *Jones* v. *Flint*, 10 Ad. & E. 753 ; *Dunne* v. *Ferguson*, 1 Hayes, 541 ; *Whipple* v. *Foote*, 2 Johns. 422 ; *Stewart* v. *Doughty*, 9 Johns. 112 ; *Austin* v. *Sawyer*, 9 Cow. 39 ; *Cutler* v. *Pope*, 13 Me. 377 ; *Bryant* v. *Crosby*, 40 Me. 21 ; *Ross* v. *Welch*, 11 Gray, 235 ; *Kingsley* v. *Holbrook*, 45 N. H. 313 ; *Howe* v. *Batchelder*, 49 N. H. 204, 208 ; *Marshall* v. *Ferguson*, 23 Cal. 65 ; *Davis* v. *McFarlane*, 37 Cal. 634 ; *Bernal* v. *Hovious*, 17 Cal. 541 ; *Graff* v. *Fitch*, 58 Ill. 377 ; *Bull* v. *Griswold*, 19 Ill. 631 ; *Carson* v. *Browder*, 2 Lea, 701 ; *Buck* v. *Pickwell*, 27 Vt. 157 ; *Bellows* v. *Wells*, 36 Vt. 600 ; Jones on Chattel Mortgages, s. 145, and cases cited in note 3.

considered a severance, in law, *before* the law day has expired. However this may be, we think if an absolute sale operates a severance in contemplation of law, then a chattel mortgage, executed as this was, after condition is broken, must have the same effect; because the established rule in this State is that after the condition is broken the interest of the mortgagor becomes at law absolutely vested in the mortgagee, and he is entitled to immediate possession. *Hagar* v. *Brainard*, 44 Vt. 294. The mortgagor, if he remains in possession, is only tenant at sufferance, with right of redemption in equity. We regard the condition of this mortgage as broken immediately upon execution. It was given as further security of notes which specified when they were to be paid and which were then overdue. This same mortgagee was then entitled to the possession under the breach of the original mortgage. In such a case no demand was necessary in order to create a breach of the condition of the new mortgage. It does not appear that any extension of time was given; and no implication arises that the terms of the debt were varied.

We think that, although growing grass may be realty, the owner of it and of the land on which it grows may mortgage it as a chattel and that such mortgage is valid between the parties; and that when the mortgage becomes absolute by the non-performance of the conditions thereof before an actual severance of the grass, it operates a severance in law so as to change the grass from real to personal property, and that a record of the mortgage, as required by law in case of chattel mortgages, is constructive notice to third parties after the grass is cut; and that such mortgage and record then constitute a valid lien as against an attachment as a chattel of the mortgagor. Jones, s. 146, and cases there cited; *Fitch* v. *Burk*, 38 Vt. 683; *Sterling* v. *Baldwin*, 42 Vt. 306; *Cudworth* v. *Scott*, 41 N. H. 456.

It is not decided that the same result would not follow if the condition of the mortgage was not broken—see *Bank* v. *Crary*, 1 Barb. (N. Y.) 546—or whether the mortgage must be executed as this was.

The description of the property was *prima facie* sufficient. It is not necessary that the property should be so described as to be

capable of being identified by the written recital. The description need not be such as would enable a stranger to select the property, but it must point out the subject-matter of the mortgage so that a third person by its aid, together with the aid of such inquiries as the instrument itself suggests, may identify the property covered. Jones, ss. 53–55.

The *pro forma* judgment of the county court is reversed, and judgment for the defendant.