## ORANGE ADAMS AND OTHERS *v.* THE ST. JOHNS-BURY & LAKE CHAMPLAIN R. R. CO. AND LAMOILLE VALLEY R. R. CO.

### [In Chancery.]

*Railroad Land Damages, Equitable Lien for. Measure of Damages. Enhancement in Value of Woodland, when not Considered. Interest.*
*Evidence.*

1. The owner of a mortgage interest in land has a lien thereon enforceable in equity for its "equivalent in money," when the land is taken by a railroad company for the purpose of building its road-bed on it, the land having been taken after the condition in the mortgage was broken, but before foreclosure; and the lien holds, when the land was entered upon without payment, and the road constructed against the protests and threats of interference by the mortgagor, who was finally restrained by injunction, *although he had agreed with the company as to the amount of damages.*

2. The lien also holds, although the old company is insolvent and the railroad is now owned and operated by a new company, formed by the mortgagees of the old company after foreclosure of their mortgage.

3. DAMAGES. The measure of damages is not the agreement between the mortgagor and the company; but the actual damages to the land.
4. Evidence was not admissible to prove that woodland was enhanced in value by the building of the railroad over meadow land attached to the same farm.
5. INTEREST. Interest is recoverable from the present company only from the date of its possession.

BILL IN CHANCERY. Heard on bill, answer, traverse, master's report, and exceptions thereto, September Term, 1883, Franklin County. ROYCE, Chancellor, decreed that the defendants be perpetually enjoined from operating their railroads and running trains over the lands owned by the orators mentioned in the bill, unless they pay to the clerk of the court for the benefit of the orators the sum of $1,463.65, with interest from August 10, 1883, and the sum of $200 with interest from the date of the decree, and costs, on or before June 1, 1884.

The bill was brought at the April Term, 1882, to recover damages for lands taken by the defendant, the L. V. R. R. Co., for railroad purposes, and prayed that the orators might have a special lien on the land, &c., and that the defendants be enjoined from running their cars over said land unless they paid said damages. The orators were Orange Adams, J. H. Cotterell and Fannie F. Cotterell, wife of said J. H., Mahala Wells, and H. M. Wells. The land taken by the railroad was meadow land, and part of a farm situated in Bakersfield, and owned by James H. Malavin, as a mortgagor. Malavin executed, March 10, 1866, a mortgage on said farm to Gardner A. Paige to secure certain promissory notes. On or about January 1, 1870, said Paige sold two of said notes to said Fannie F. Cotterell, and at the same time sold three of said notes to A. C. Wells, and also transferred a proportional part of the mortgage security to them. The other nine of said notes were transferred, October 31, 1871, by said Paige to said Adams. One note fell due each year. The owners of the mortgages foreclosed, and the decree became absolute March 1, 1879. On January 1, 1880, the executor of A. C. Wells' estate

deeded the interest of that estate to the said H. M. Wells and Mahala Wells.

The masters found:

" That the said Lamoille Valley R. R was fully completed and put in operation on the 1st day of August, A. D. 1877; and that said Lamoille Valley R. R. Co. continued to operate said road over and upon said Malavin farm until the 1st day of July, A. D. 1880:

" That on the 1st day of May, A. D. 1871, the said Lamoille Valley R. R. Co., jointly with the Montpelier & St. Johnsbury R. R. Co., and the Essex County R. R. Co., executed a mortgage of the railroads of the said three companies to Luke P. Poland and A. T. Lowe, in trust to secure the payment of bonds jointly issued by said companies to the amount of $2,300,000; and afterwards, on the 18th day of July, A. D. 1876, the said three companies jointly executed another mortgage of their said railroads to Luke P. Poland in trust, to secure the payment of bonds jointly issued by the said companies to the amount of $500,000; and the said bonds secured by said mortgages were by the said companies all negotiated and sold, and all went into the hands of *bona fide* purchasers for value; and the said companies having made default in the payment of interest on said bonds, foreclosure suits were duly commenced thereon by said trustees at the December Term of the Caledonia County Court of Chancery, A. D. 1877, and such proceedings were had therein that final decree of foreclosure was obtained in favor of the trustees against the said company at the December Term of said court, A. D. 1879; and the said companies having failed to make payment as ordered by said court, the said decree became absolute in the said trustees for and in trust for the holders of said bonds.

" And the masters find, that after the decree of foreclosure had become absolute against the Lamoille Valley R. R. Co., the Montpelier & St. Johnsbury R. R. Co., and the Essex County R. R. Co., the holders of the bonds secured by said mortgages, and for whom the said trustees held the title of said roads, under said decree in trust, proceeded under the statute of this State to form themselves into a corporation under the corporate name of the St. Johnsbury & Lake Champlain R. R. Co.:

" That the St. Johnsbury & Lake Champlain R. R. Co.

were duly organized under the laws of this State, and took possession and went into the operation of the railroad of the Lamoille Valley R. R. Co. on the 1st day of July, 1880, and have ever since continued to operate said road." * * *

The solicitor for the orators made the following request, viz.:

"Find and report the actual damage to said Malavin farm by reason of the railroad company not maintaining any underground cattle pass, upon the basis that the railroad company are not to maintain any such pass."

"Upon this request the masters report, that there was not sufficient evidence introduced before them to warrant any finding; but if the court is of the opinion that the masters are warranted by an inspection of the said Malavin farm and the location of the railroad thereon to ascertain such damages, then we fix such damages at the sum of $200.

"And the masters further report, that in fixing the damages to said Malavin farm at $900, it was upon the basis that no underground cattle pass would ever be maintained on said farm." * * *

"The masters find and report, at the special request of the defendant, the St. Johnsbury & Lake Champlain R. R. Co., that James H. Malavin, on the 17th day of February, A. D. 1870, made, executed, and delivered his bond to the Lamoille Valley R. R. Co., in the ordinary form of a penal bond in the sum of $500, to which was attached a condition in the words and figures following, to wit: 'That if the above bounden James H. Malavin, his heirs, executors, administrators, or assigns shall, in case the railroad company survey, locate, and build its railroad upon or across his land, execute and deliver to said railroad company a good and sufficient deed of so much of his land as may be necessary for the location, construction, and operation of said road, and receive therefor $50 per acre for all the land so taken on my meadow, and give all the land they may want in my pasture provided the said road is built on the west side of the creek, and in case the said company build the said road on their present located survey, it is understood I am to have $75 per acre for all land so taken in my meadow, and for what they want in my pasture I will make no charge. It is understood that said company shall fence said road on both sides, establish all passes necessary either over or under said road for the convenience of

said farm, both for the purpose of going over said track and under said track, that cattle may go to and from water in the creek; and until the execution of said deed, allow and permit said company and their agents and employes to enter upon his said land for all purposes necessary for the location and construction of said road, then this obligation shall be void, otherwise shall remain in force.'

" The solicitor for the defendant, the St. Johnsbury & Lake Champlain R. R. Co., requested the masters to further find, that said bond was duly delivered to the Lamoille Valley R. R. Co., and that said company proceeded in the location of their said railroad, relying upon the condition set forth in said bond.

" The masters are not able to find from the evidence before them, that said company proceeded to locate their said road, relying on said bond; and do find that said company did not proceed with the said construction of said road relying on said bond: * * *

" That on the 10th day of January, A. D. 1876, and before any grading had been done on that portion of said railroad running through and over said Malavin farm, the said Malavin made an agreement with the Lamoille Valley R. R. Co., fixing the amount of damages to said farm at $1,100, and that said railroad company should be released from all obligation to build any bridges across the said creek: "

" That upon several occasions that said Malavin did object to said construction, and forbade said railroad company and their agents and employes from entering upon said farm for the purpose of constructing said railroad until the land damages should be paid. We do find and report, that while said Lamoille Valley R. R. Co. were at work in the construction of said railroad through and over said farm, said Malavin did threaten to interrupt and prevent the construction of said road, and that said Lamoille Valley R. R. Co. did procure an injunction, returnable before the Court of Chancery to be holden at St. Johnsbury, in the County of Caledonia, on the first Tuesday of December, A. D. 1877, to restrain him from so doing; which injunction was duly served on the said Malavin on the 20th day of June, A. D. 1877.

" We further find and report, that the construction of said railroad of the said Lamoille Valley R. R. Co. through the town of Bakersfield, and over and through the said Malavin

farm, was open and notorious; and that no evidence was offered before us tending to show that the mortgagees, then interested in said Malavin farm, or any of them, ever objected to such location and construction.

"The masters further find from the answer alone, there being no evidence introduced either to support or deny the allegation, and at the special instance and request of the defendants' solicitor report, that as the said Lamoille Valley R. R. Co. was proceeding to lay the track upon said graded road, the said Malavin did threaten to interrupt and prevent the laying of the same, unless his damages were paid, and said Lamoille Valley R. R. Co. procured an injunction to restrain him from so doing, as above stated."

The following question was asked a witness by the defendants' solicitor: "What would be the worth of that wood standing (referring to the wood on the Malavin farm) if the railroad was not there?" Mr. R. H. Start, solicitor for the orators, said: "The defendants offer to prove by this witness that the value of the standing timber on this Malavin farm has been increased from two to four thousand dollars on account of the market created by the railroad." The question was excluded.

The mortgage debt on the Malavin farm at the date of the decree of foreclosure—September 20, 1878—was $8,631.86, and the farm rented for $360 per year. The bond executed by said Malavin was subsequently superseded by the agreement fixing the land damages at $1,100. The masters found that, if they were not bound by the agreement, the damages were $900, with interest from August 1, 1877; that if the $1,100 agreement, made January 10, 1876, was the correct measure of damages, the orators were entitled to recover $1,600.50; but if the interest was to be computed only from the time the Lamoille Valley R. R. Co. began to operate the railroad—August 1, 1877—then they should recover $1,463.65; that if interest should be computed on the $1,100 only from July 1, 1880, then they were entitled to recover, on August 10, 1883, $1,305.15; or if interest was computed on the $900

from July 1, 1880, then they should recover $1,067.85. No part of the land damages had been paid by the defendants.

*Burt, Hall & Burt,* for the defendant.

The ground of recovery set forth in the orators' bill is, that the land taken was worth $2,000; that such taking lessened the value of the orators' mortgage security to the amount of $2,000, and that thereby the orators lost on their mortgage debt that sum. The orators cannot recover unless said allegations are sustained by proof, and the findings of the masters. *Thomas* v. *Warren,* 15 Vt. 110; *Barrett* v. *Sargent,* 18 Vt. 365. The orators took the farm as purchasers at the date of foreclosure, and their debt was thereby paid to the extent of the value of the farm. *Lovell* v. *Leland,* 3 Vt. 581; *Paris* v. *Hulett,* 26 Vt. 368; *Calkins* v. *Clement,* 54 Vt. 638. It is well settled that a subsequent purchaser has no right to damages that accrued before the purchase. Red. R. R. (3d ed.) p. 350. Both the orators and the St. Johnsbury & Lake Champlain R. R. Co. were mortgagees at the time of the agreement between the respective mortgagors as to the damages; neither of them were parties to the agreement, and are not bound by it. *Perkins* v. *Petts,* 11 Mass. 125, 130; *Murphey* v. *Welch,* 128 Mass. 489.

The orators, if entitled to recover at all, cannot recover interest on the damages before March 1, 1879, when their decree became absolute. 1 Jones Mort. s. 670; *Boston Bank* v. *Reed,* 8 Pick. 459; *Mayo* v. *Fletcher,* 14 Pick. 525.

The mortgagor while in possession is entitled to recover for his own benefit all damage done the mortgaged premises while he is thus in possession. 1 Jones Mort. s. 671; *Vaugh* v. *Witherell,* 116 Mass. 138; *Paine* v. *Woods,* 108 Mass. 160. The orators are not entitled to interest against the St. Johnsbury & Lake Champlain R. R. Co. prior to July 1, 1880. 7 Pick. 140, and cases *supra.* The defendants should have been allowed to prove that the woodland was increased

in value. Pierce R. R. 223; *Donavan* v. *Springfield,* 125 Mass. 371; *Shattuck* v. *Stoneham Branch R. R.* 6 Allen, 115; *Hayes* v. *R. R. Co.* 54 Ill. 373; *Walker* v. *Oxford Manf. Co.* 10 Met. 203.

*Edson, Cross & Start,* for the orators.

So far as the right of the land-owner to a decree is concerned, the facts bring this case expressly within the recent cases decided by this court. *Kendall* v. *M. & C. R. R. R. Co.* 55 Vt. 438; *Kittell* v. *Missisquoi R. R. Co.* 56 Vt. 96; *Hart* v. *Same,* Ib.

This case differs from those above cited, only in being brought by persons who held the interest of the mortgagee at the time of the entry and construction of the railway, and who have since acquired the title to the farm by foreclosure against the mortgagor. The mortgagee is entitled to relief, even though the railroad company has settled with and paid the mortgagor in full. *Hagar* v. *Brainerd,* 44 Vt. 294; *Wade* v. *Hennessy,* 55 Vt. 207; R. L. s. 3367.

And as between the mortgagor and the mortgagee, the mortgagee is entitled to the whole compensation awarded. *Lambton, ex parte,* 17 Moak Eng. Rep. 778; 19 Wend. 659. The agreement as to the amount of damages is the true basis of recovery. R. L. s. 3359; *Hart* v. *Missisquoi R. R. R. Co. supra.*

Interest upon the damages should commence to run from the date of the entry upon the land by the Lamoille Valley R. R. Co. The claim for damages is a claim for an equivalent for the land taken, and becomes operative by reason of the taking of the land, and is then due and payable. It is this original claim that we seek to enforce against the railroad in the hands of the St. Johnsbury & Lake Champlain R. R. Co.

Evidence as to the enhanced value of the woodland was properly excluded. Pierce R. R. pp. 222–4; *Childs* v. *New Haven & Northampton Co.* 133 Mass. 253.

No presumption of payment arises from the foreclosure, and the mortgagees do not stand as subsequent purchasers. After the law day had past, the mortgagees were owners of the premises, and as such were entitled to the damages at the date of the entry. *Hagar* v. *Brainerd, supra;* 2 Wash. R. P. 517; *Moore* v. *McGuire,* 4 Vt. 327; 5 Gray, 470.

The opinion of the court was delivered by

VEAZEY, J. This case has been twice argued. The right of the orators to a decree, upon the facts reported, is established by recent cases in this court. *Kendall and Wife* v. *M. &. C. R. R. R. Co.* 55 Vt. 438; *Kittell* v. *Missisquoi R. R. R. Co.* 56 Vt. 96. Those cases stand on the principle, that when land is taken for public use, the owner has a lien upon it for its "equivalent in money" (art. 2, ch. 1, Constitution of Vermont), which a court of equity will enforce, unless the owner has done that which in law precludes him from asking its enforcement.

We hold that the land-owner is not estopped by an agreement as to the amount of damages, where he does not consent to the taking of the land before payment, but objects and forbids and threatens to interrupt and prevent, and is thereupon enjoined from so doing, which was this case. But it is claimed the case at bar differs from those cited in that it is brought not by the land-owner but by persons who held the interest of the mortgagee at the time of the entry and construction of the railway.

The foreclosure of the mortgage was not obtained until after the land was taken, and the defendants claim that the orators acquired title only as purchasers at the date of the foreclosure. This is not sound; because the mortgage debt, or a portion of it, was overdue long before the land was taken; and it is settled, that after condition broken the interest of the mortgagor becomes at law absolutely vested in the mortgagee. *Kimball* v. *Sattley,* 55 Vt. 285; *Hagar* v.

*Brainerd,* 44 Vt. 294. See, also, *Wade* v. *Hennessy,* 55 Vt. 207.

The orators claim that the agreement as to damages which the land-owner and mortgagor made with the company that took the land, is the true basis of recovery in this case. They agreed that the damages were $1,100. The masters find the damages were $900.

We are unable to see how the mortgagor, who had no right except to redeem, could bind the mortgagees on the question of value of the mortgage premises, or a portion thereof, any more than in the matter of title. The title and the right of each party to the mortgage were defined by well settled rules of law; and neither could be affected by agreements of the other with third parties. The mortgagees' title was perfect, subject to the right of redemption, which has since been foreclosed; and they will be made whole, when they receive the actual damages to the farm, which the taking of the land and the building thereon of a railroad has caused it. They will then have received an "equivalent in money" for land "taken for public use." This amount the masters have found. They would not have been bound by an agreement of the mortgagor for a less amount. The agreement was not made by authority in their behalf. Not being bound by it, it was not such an agreement that they can take advantage of it. No claim is made that the damages were different when the present company took possession from what they were when the former company first took the land.

Another question arises on the report in respect to the damages. The defendants offered to prove that the value of the standing timber on this farm has been increased from two to four thousand dollars on account of the market created by the railroad, which evidence was excluded by the masters, to which exception was taken.

The orators urge two answers to this claim; first, that under our constitution the benefits to the land through which

a railroad is built cannot be deducted in determining the compensation; second, that if this was allowable the offer was not specific and broad enough in this case. Without passing upon the first objection, we think the second is well taken. The deduction for benefits must be limited to the particular tract which is in part taken, and the benefits be confined to such as are direct and peculiar to the owner, excluding those which he shares with others whose property is not taken. If the benefit is only personal and does not affect the land, it cannot be considered. Pierce R. R. p. 221, *et seq.* and cases there cited. The railroad could not have increased the value of Malavin's wood and timber without increasing that of his neighbors. To allow deductions on account of his benefit would therefore be exacting contribution from him and relieving others benefited in like manner. The offer was not to show the benefit specified was peculiar to him; nor was it an offer to show a fact that was necessarily a peculiar benefit, and not common. The offer was to show a fact in substance like the rise of real estate resulting from the building of a railroad, which is held to be a general advantage, common to all in the vicinity not peculiar to any one. Pierce R. R., 223; *Childs* v. *New Haven & Northampton Co.* 133 Mass. 253.

Another question is as to when interest shall begin to run on the damages found by the masters. The orators claim it should be from the time the Lamoille Valley Railroad Company entered upon the land. This would be so as against that company; but the St. Johnsbury & Lake Champlain Railroad Company denies that it is liable for interest prior to its possession of the road. The question as here raised has not been passed upon in previous cases in this State. This railroad was mortgaged to a trustee for bondholders to secure a large bonded indebtedness. This mortgage was foreclosed in December, 1879, and the decree expired without redemption and became absolute. The

bondholders then proceeded under the statute and organized into a corporation called The St. Johnsbury & Lake Champlain Railroad Company, and took possession of the road July 1, 1880, and have retained possession ever since. This company included in its possession and use the land in question. It never had any right to this land or to the use of it, because the railroad mortgage, which was prior to the possession of the land by the former company, conveyed no interest in it. This company simply took and used the land for railroad purposes, without right, and became liable therefor. It was not bound to take the land, or it might have taken it under the right of eminent domain, as provided by statute. It neither assumed nor succeeded to any of the debts of the former company. The liability of that company for its taking and use still exists. The mortgage of the railroad and foreclosure thereof, without redemption, did not work a dissolution of that company. Its corporate existence and general corporate powers continued as before. *Eldridge* v. *Smith et al.*, 34 Vt. 484. This is a suit in equity, and the orators are seeking to enforce an equitable remedy. They rested on their claim, for which they had remedies in law as well as in equity, for many years and until the old company became insolvent and a new one was organized by its creditors and took the road. They now seek to enforce a lien upon this land, for the damages in taking it, by foreclosure or injunction against both companies. If the new company had not entered upon this land it would have incurred no liability. Having taken it a liability was thereby created. No judgment had been obtained by the land owner on account of the previous taking as in the case of *Pfeifer* v. *S. & F. R. R. Co.* 18 Wis. 155. The new company being organized under the statute independent of the former company, did not directly become the owner of the road by contract of purchase; nor indirectly of this land through the mortgage or otherwise. In the absence of any right or liability established by con-

tract or by judicial proceeding as between the original parties, and of any contract succession to the present company, and of any obligation of this company as to this land prior to entering upon it, but having the right to take it *de novo* in exercise of the right of eminent domain, we think the fact that the act of this company was a continuance of the wrongful use of the former company, is not sufficient to make this company responsible anterior to its own possession.    Such a holding would in effect be to make this company liable for the other company's use of this land. Interest should be reckoned as against each company from the date of its possession.

The decree is reversed and the cause remanded with a mandate pursuant to these views.

TAFT, J., dissents.